**Myles James SWIFT, Appellant,**

v.

**DIRECTOR OF SELECTIVE SERV-ICE et al.**

**No. 24137.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 4, 1970.

Decided July 16, 1971.

Mr. Gaillard T. Hunt, Washington, D. C., with whom Mr. Walter C. Farley, Washington, D. C., was on the brief, for appellant.

Mr. Morton Hollander, Atty., Department of Justice, with whom Messrs. Thomas A. Flannery, U. S. Atty., and Reed Johnston, Jr., Atty., Department of Justice, were on the brief, for appellees. Mr. Robert E. Kopp, Atty., Department of Justice, also entered an appearance for appellees.

On Appellees' Petition for Rehearing

Before BAZELON, Chief Judge, and ROBINSON and WILKEY, Circuit Judges.

PER CURIAM:

Appellant Swift sought an injunction to prevent his induction into the Army, asserting that his induction order was invalid for two reasons. He urged first, that his draft status must be governed by the new Random Selection Sequence Regulations,[1] not by the order of call existing on the date of his original induction order; and, second, that his local board acted unlawfully in refusing to reopen his classification in response to his post-induction order claim of conscientious objection. The District Court resolved the first contention against appellant on the merits. We affirm that decision for the reasons given in Part II of this opinion.

The District Court further held that appellant's second contention was barred from pre-induction review by Section 10(b) (3) of the Military Selective Service Act of 1967 (50 U.S.C. (Supp. V, 1970) § 460(b) (3)). In our initial opinion in this case of March 16, 1971, we disagreed with that conclusion and held, Judge Wilkey dissenting, that under United States v. Gearey[2] appellant had stated a claim that the board had acted unlawfully which could be reached on pre-induction review. However, we noted in our March 16, 1971, opinion that if we had chosen to follow Ehlert v. United States[3] "appellant would have no feasible claim that his board acted lawlessly in refusing to reopen his classification."

■ Subsequently, before the mandate of this court had issued, the Supreme Court affirmed the Ninth Circuit's decision in *Ehlert*,[4] holding that under the applicable regulations a claim of conscientious objection which matures after issuance of an induction order may not be entertained by the Selective Service, but must be considered by the military after induction. *Ehlert* obviously removes the basis for appellant's contention that his board unlawfully refused to consider his *post*-induction order claim to conscientious objection. We therefore vacate our opinion of March 16, 1971, and thus also affirm the District Court's action in denying a preliminary injunction on this second ground.

1.  32 C.F.R. § 1631.7 (1970) (effective January 1, 1970).

2.  368 F.2d 144 (2d Cir. 1966); 379 F.2d 915 (2d Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967).

3.  422 F.2d 332 (9th Cir. 1970).

4.  Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971).

## I. FACTS

Appellant was classified I–A [5] by his local board in Allentown, Pennsylvania, in March 1969. He took an appeal,[6] and was classified I–A–O [7] by an appeals board. On September 12, 1969 he received an order to report for induction on October 1. Appellant obtained assorted postponements of the reporting date; then, on November 22, he presented his board with a request to change his classification to I–O [8] on the ground that his views, which had crystallized after the induction order, prevented him from serving in the Army at all.[9] By letter of December 11, the board informed appellant that it had considered the information submitted in support of his I–O claim, and had unanimously refused to reopen his file.[10] The Pennsylvania State Director of Selective Service, on January 5, 1970, reviewed appellant's file, and concluded that the local board had acted properly.[11]

In the meantime, by letter of December 19, 1969, the local board had ordered appellant to report for induction in Allentown on January 15, 1970. He did so, but no final decision as to his acceptability was reached because further physical tests were needed. On January 21, 1970, appellant was ordered by his local board to report to Walter Reed Army Hospital on February 11, for the tests. He reported as directed, and on February 17 he was informed that he had been found fully acceptable for induction. The next day he was ordered by a letter from his local board to report for induction in Allentown on March 2, 1970.[12] Later,

---

5. Persons in this classification are available for military service, 32 C.F.R. § 1622.2 (1970), for failure to show that they are eligible for another class, *id.*, § 1622.10 (1970).

6. The administrative scheme of the Selective Service System is found in 32 C.F.R. §§ 1623 to 1627 (1970).

7. Persons in this class are conscientious objectors available for non-combatant service only, 32 C.F.R. § 1622.2 (1970). According to appellant's brief, virtually all I–A–Os are used as medical personnel.

8. Persons in this class are conscientious objectors available only for civilian work, *id.*

9. Briefly, appellant states that after the induction order was issued he found that almost all I–A–Os are used in a position "he found as conscientiously objectionable as actual combat, service in the medical corps;" and that "the Army feels that all its personnel contribute to its basic mission, and that all non-combatants, not only medics, are essential to the machinery of fighting." Appellant's Brief at 1–2.

10. The entire letter was as follows:

The Local Board considered the information you submitted in support of your claim for a I–O classification but they decided unanimously not to re-open your file. You [sic] Induction Order, therefore, is still in effect.

You will be advised by letter when and where to appear for Induction into the U. S. Armed Forces.

11. The entire letter was as follows:

The file of the registrant has been reviewed.

It has been determined that the local board properly considered the registrant's claim for a Class I–O classification after he had been classified in Class I–A–O.

Although not stated in specific language the Classification Questionnaire on page 8 indicated that the local board considered the claim according to Section 1625.2 of selective service regulations and did not find first a change in the registrant's status as a result of circumstances beyond his control.

No action by this headquarters is deemed to be warranted.

12. Appellant argues that this letter improperly failed to observe the 21-day delay between issuance of DD Form 62 and an order to report for induction mandated by 32 CFR § 1631.7 (1970). However, as discussed in Part II, *infra*, the local board was acting pursuant to an already outstanding induction order in notifying appellant by letter to report. Section 1631.7 is therefore not applicable. Moreover, we think it evident from the circumstances of this case that the local board simply utilized DD Form 62 as a convenient method of notifying appellant of the result of his examination at Walter Reed Hospital. Since on oral argument appellant's counsel conceded that a DD Form 62 had already been sent to appellant some months prior to his initial induction order on SS Form 252, it is apparent that the second DD Form 62 of

appellant's request for a transfer of induction was granted, and he was to have reported for induction in the District of Columbia on April 7, 1970. Court proceedings leading to a stay of induction order from this court were started on April 1, 1970.[13]

## II. RANDOM SELECTION

■ Appellant argues that his induction order was terminated by the events of January 15, 1970, when he reported to the Armed Forces Entrance Examination Station (AFEES) and was not inducted because of an inability to complete his physical examination on that day. Thereafter, appellant maintains, he could only be inducted pursuant to a new induction order, issued in conformity with the order of call established by the new regulations effective January 1, 1970, calling for a lottery.[14] Since resolution of this question involves only a legal issue, and does not call for a review of a factual determination or the exercise of discretion by the local board, we think it plainly can be reached on preinduction review.[15]

Appellant emphasizes that his original order to report for induction (SS Form 252) dated September 12, 1969, which was postponed several times, was still in effect on January 15, 1970, and that he fully complied with this order by reporting at the time and place designated and being physically examined. Appellant alleges, and the District Court took as true on his expressed willingness to testify and on the Government's representa-

tion that no dispute of fact existed, that on January 15 he was sent from the AFEES and told by AFEES personnel that the next orders he would get would be from his local board. He asserts that the reason for this was that his physical examination had only been partly completed, that further examination in regard to his problems of flat feet and a bad back could not be done at the local station, and the facilities of a hospital such as Walter Reed were required. He subsequently was sent to Walter Reed for further examination which resulted in his being determined medically acceptable, as he was informed by the notice sent February 17, 1970.

On this state of facts appellant argues that his order of induction of September 12, 1969, was thus terminated or exhausted, that a new order of induction from the local board was necessary to put him once again in line for military service, and that such order had to be issued under the new random selection regulations.

Appellant does not, and the Government asserts he cannot, point to any provision in the statutes, Selective Service regulations, or Army regulations that states specifically that the failure to induct a registrant into the Armed Forces on the day he reports pursuant to an order of induction, when the reason for the delay is an incomplete physical examination, has the legal effect of canceling or terminating his previously issued induction order. On the other hand, appellant asserts that the Government can

February 17, 1970 was merely intended to inform appellant of the satisfactory result of his Walter Reed visit and was not intended to serve as the prerequisite to a new order to report as contemplated by § 1631.7. While the use of DD Form 62 for the former purpose is no doubt poor administrative practice, contrary to applicable regulations, see AR 601-270 ¶ 3.31(b), and needlessly confusing, we do not think any right of appellant's was violated thereby.

13. Appellant initially sought a temporary restraining order in the District Court to prevent his April 7 induction. This

was denied, and we allowed an emergency appeal, which was dismissed when appellant's induction was postponed until April 14. The District Court then refused to enjoin appellant's induction, and on April 13 we stayed the induction pending appeal.

14. *Supra* note 1. Appellant's lottery number is 342.

15. "Preinduction review will always lie where * * * the facts are uncontested, no discretion is involved, and the applicable 'law' is clear." Shea v. Mitchell, 137 U.S.App.D.C. 227, 230, 421 F.2d 1162, 1165 (1970).

point to no statute, regulation, or other authority which says that the induction order continues in full force and effect.[16]

It is probable that many thousands of registrants have been treated in the same manner as apepllant here, *i. e.*, the registrant has reported for a physical examination, some problem has been encountered which is beyond the capacity of the particular examining station to determine with finality, and the registrant has been told to go back to his residence and that he will be advised later as to when and where his physical examination can be completed. The registrant has then been found medically acceptable or unacceptable, and the Selective Service process has functioned in a normal manner in taking or rejecting him.

It is obvious that the reason this question has seldom arisen in court before is that few registrants ever found themselves with the attractive alternative possibility that appellant here claims, *i. e.*, if the induction order was exhausted by appellant reporting on the day specified and the Armed Services were unable to complete his physical exam until space could be secured for him to be examined at a more elaborate medical facility such as Walter Reed, then appellant could only be reordered to report for induction under the new random selection regulations. With lottery No. 342, appellant would naturally prefer this alternative if in law it does exist.

We think the answer to this question is indicated by Army Regulation 601–270, Section 3–31 of March 18, 1969.[17]

16. The regulation, 32 CFR § 1632.14 (1970) provides that a registrant who either fails to report for induction, or whose induction is postponed, is under a continuing duty to report for induction. Appellant urges that (1) he did not fail to report for induction, but rather reported and was turned away; and (2) his induction was not formally "postponed" after January 15, 1970, when he reported, and his medical condition was deemed undetermined. As to this latter contention, appellant maintains that since no postponement of induction under 32 CFR § 1632.2 (1970) was accomplished, 32 CFR § 1632.14, which provides for a continuing duty to report when a "postponement" is terminated, cannot come into play to extend appellant's order. The contention made is therefore that the "postponement of induction" authorized by § 1632.2 is the *only* type of postponement which § 1632.14 contemplates as extending the effect of an induction order. This argument, however, falls of its own weight, since appellant admits that his induction was lawfully "postponed" several times, and that his original induction order continued in effect until January 15, 1970. Section 1632.2 authorizes the local board, on request of a registrant, to grant a postponement of induction in cases of "extreme emergency" or hardship "beyond the registrant's control." The postponements received by appellant, however, were clearly not of this nature. His induction was delayed at least twice, on September 15, 1969, and November 28, 1969, as a result of the granting of his requests to have his induction trans-

ferred to the District of Columbia. Another delay occurred on November 25, 1969, apparently to permit the board to consider whether to reopen appellant's classification on his claim for I–O status.

Appellant does not claim that these delays or postponements were in any way invalid, and it is evident that they were *not* granted pursuant to § 1632.2. It follows, therefore, that the word "postponement" as used in § 1632.14 must have a broader meaning than simply those postponements granted under § 1632.2. At least two circuits, in situations similar to the instant case, have so held. United States v. Ritchey, 423 F.2d 685 (9th Cir. 1970) ; United States ex rel. Luster v. McBee, 422 F.2d 562 (7th Cir. 1970) ; *accord*, United States v. Evans, 425 F.2d 302 (9th Cir. 1970) ; *contra*, Liese v. Local Board, 314 F.Supp. 521 (E.D.Mo. 1970). Consequently, the mere fact that action prescribed by § 1632.2 was not taken when appellant's induction was delayed on January 15, 1970, does not necessarily mean that he is no longer under a duty to report pursuant to his original order.

17. Section 3–31 of Army Regulation (AR) 601–270 provides as follows :

3–31. Registrants found unacceptable on physical inspection or complete medical examination, registrants pending security processing or additional mental evaluation or moral or medical waiver action, and registrants refusing to submit to induction or who are uncooperative.

This section is the Armed Services' effort to provide administrative instructions for handling registrants at the Armed Forces Entrance Examination Stations under various contingencies. Insofar as the medical examination itself is concerned, it is obvious that each registrant will fit into one of three categories: one, medically acceptable; two, medically unacceptable; or three, medical acceptability undetermined for any of several reasons. Sub-paragraph *a.* gives specific instructions as to what officials at the AFEES are to do with those registrants found "medically unacceptable," specifying which forms will be filled out and what transportation will be provided the registrants, etc. Sub-paragraph *b.* is a similar effort to instruct officials at the AFEES as to how to handle registrants "whose medical acceptability is undetermined" on the first day of examination. These pertinent instructions state:

*b. Registrants whose acceptability is undetermined.*

In the case of registrants whose acceptability for induction in undetermined, pending * * * further hospital study/consultation, or additional mental evaluation, their records may be held at the AFEES for completion upon final determination of acceptability. The registrant will be advised that his acceptability for induction is undetermined pending the above determinations and that he will be further advised by his Local Board. The registrant will be returned to his Local Board in the same manner as other registrants rejected at time of induc-

*a. Medically unacceptable registrants.* For registrants found medically unacceptable, the following procedure will be followed:

(1) Applicable subitems under section VIII, DD Form 47, will be completed.

(2) Disposition of registrant will be entered in column 4, SSS Form 261.

(3) Appropriate entries will be made on duplicated copies of the Standard Form 88 for registrants found unacceptable at time of physical inspection (para. 4–21).

(4) Processing personnel will review each registrant's DD Form 47, Standard Form 88, Standard Form 89, and DD Form 98, and other forms prepared, for accuracy and completeness.

(5) If necessary, transportation arrangements will be made for returning them to the appropriate Selective Service local boards, or in appropriate cases, to place of residence. Every effort will be made to place the registrants on return transportation on the same day of their arrival at the AFEES.

*b. Registrants whose acceptability is undetermined.* In the case of registrants whose acceptability for induction is undetermined, pending security processing, moral or medical waiver action or for further hospital study/consultation, or additional mental evaluation, their records may be held at the AFEES for completion upon final determination of acceptability. The registrant will be advised that his acceptability for induction is undeter-

mined pending the above determinations and that he will be further advised by his local board. The registrant will be returned to his local board in the same manner as other registrants rejected at time of induction. Disposition of the registrant will be shown on SS Form 261 as "Acceptability Undetermined" with the remark "Pending medical, mental or admin. action," as applicable. DD Form 62 will not be accomplished for those individuals (provided a DD Form 62 was prepared at the time of initial examination) until it is determined that they are *unacceptable* for service. If the final determination results in a decision that the registrant is acceptable of induction, DD Form 62 will *not* be prepared; instead, a letter will be prepared and forwarded to the local Selective Service board including a statement substantially as follows: "Registrant (*Name*) (*Selective Service number*) is removed from 'Acceptability Undetermined' status and the original determination of acceptability on DD Form 62, date ——, 'found fully acceptable for induction into the armed forces,' is unchanged." His other records will be completed and distributed in the same manner as for registrants found acceptable at time of preinduction, except section VIII, DD Form 47, will not be completed until such time as the registrant is again ordered to report for induction.

*c. Registrants who refuse to submit to induction, or who are uncooperative.*
* * * * *

tion. Disposition of the registrant will be shown on SS Form 261 as "acceptability undetermined" with the remark "pending medical, mental or administrative action" as applicable.

It is readily apparent that a good many reasons could arise as to why the medical examination for some registrants could not be completed at the AFEES medical facilities. In the case of appellant, his problems of flat feet and a bad back needed more expert evaluation, which was only obtainable at a facility like Walter Reed. On oral argument, the question was posed to appellant's counsel as to whether sub-paragraph *b.* would also govern a situation in which the AFEES facility ran out of x-ray film, the registrant needed his chest x-rays completed, and he had to be told to come back at a subsequent date. Appellant's counsel stated that this situation of exhausted x-ray film would be comparable to appellant's situation of necessary further evaluation of flat feet and a bad back.

We find nothing in sub-paragraph *b.* which has the effect of or indicates that it is intended to have the effect of canceling or terminating any registrant's previously outstanding order of induction, unless and until he is found finally "medically unacceptable." Rather, we find in subparagraph *b.* an effort to provide detailed instructions, even as to precisely which forms are to be completed by the official at the AFEES, and what handling the registrant is to receive, all in contemplation of the registrant's remaining in an undetermined status until his medical acceptability can be finally determined. To us it seems highly illogical that any of innumerable possible happenstances which would interrupt the completion of the physical evaluation of a registrant have the legal effect of terminating his previously extant order of induction. For example, if for any reason an AFEES had to close for one day, this would necessarily throw all the registrants being processed that day back to their local boards to receive new orders to be inducted, on the inescapable logic of appellant's argument here. There is nothing in Section 3–31 which indicates that the effect of suspending temporarily the medical examination of a registrant until he can be processed at the proper medical facility was intended to exhaust the effectiveness of the order of induction under which the registrant and the AFEES were operating.

The fact that sub-paragraph *b.* calls for the registrant to be returned to his local board is to our minds a mere administrative convenience. It is certainly a logical feature of the Selective Service System that the registrant should look to only one place for his orders with respect to the draft—his local board. If his medical examination is interrupted and is to be continued a short time later, it is logical that the local board should have the authority to notify him. To hold that because of a fortuitous event at the AFEES an already selected registrant is thrown back to his local board to be processed again in a different order of priority with other registrants at that same local board would do violence to the whole rationale of the Selective Service System. The rationale of that system must be that the registrant, once validly called on his current draft classification, retains his relative place in the priority call, otherwise the whole system of just and fair priorities of selection for service is thrown out.[18]

18. *Cf.,* 32 CFR § 1631.7 (1970), governing those registrants called under the new lottery system, which provides:

That any registrant classified in Class I–A or Class I–A–O who is subject to random selection as herein provided, whose random sequence number has been reached, and who would have been ordered to report for induction except for delays due to a pending personal appearance, appeal, preinduction examination, reclassification, or otherwise, shall if and when found acceptable and when such delay is concluded, be ordered to report for induction next after delinquents and volunteers even if the year in which he otherwise would have been ordered to report has ended and even if (in cases of extended liability) he has attained his twenty-sixth birthday.

448 F.2d—73

In fact, it appears that the system contemplates that the induction of registrants in this position is to be neither cancelled, nor postponed, as those categories are defined by the regulations.[19] Rather, their induction is merely administratively *"delayed."* Selective Service Operations Bulletin No. 326,[20] dealing with delay of induction, provides as follows: [21]

> 5. The authority of an AFEES Commander to delay an induction for reasons other than challenges to physical qualifications, as specified in paragraph 3, is limited to the following:
>
> a. When a registrant is found unacceptable or acceptability cannot be immediately determined at the time of induction as a result of the routine induction processing procedure prescribed in AR 601–270.

This is further evidence that the Army and the Selective Service authorities quite realistically contemplated that many registrants of ultimate physical acceptability might not be immediately and finally so determined on the day of reporting, and therefore the AFEES Commander had to be told by the appropriate regulations what he was authorized to do about their situation. The provisions of paragraph 3–31, subparagraphs *a.* and *b.*, of AR 601–270 are thus part of the regulatory scheme envisaged in the Selective Service Act, giving detailed instructions to the AFEES Commander for the action to be taken when the registrant is found physically unacceptable or when his acceptability is undetermined for a period of time.

Appellant places considerable emphasis on the last sentence of subparagraph *b.*, which refers to local board action concerning a registrant whose acceptability has been undetermined for a period, as was appellant's here. This last sentence states: "His [the registrant whose acceptability has been undetermined] other records will be completed and distributed in the same manner as for registrants found acceptable at time of pre-induction, except Section VIII, DD Form 47 [22] will not be completed *until such time as the registrant is again ordered to report for induction."* Appellant argues that this last phrase has the effect of terminating the existing

---

This section replaced the earlier regulation, 32 CFR § 1631.7 (1969), 32 Fed. Reg. 9793, July 4, 1967, applicable to those called under the old system, which provided, with exceptions not here relevant, that registrants within groups designated according to age and marital status, be called "in order of their dates of birth with the oldest being selected first."

Thus, in appellant's case, had the order of call not been changed by the adoption of the lottery system, it would be totally inconsequential whether, after a delay of induction, he was ordered to report by letter or by a new SS Form 252, since he would still retain the same priority of call relative to the rest of his group.

19. This is so insofar as the definition of "postponement" is limited to that action prescribed by 32 CFR § 1632.2 (1970). However, in respect of this question, *see* note 16, *supra.* In any event, regardless of how a postponement is defined for present purposes, there is no regulation which indicates that delays such as those encountered here require the cancellation of an outstanding order of induction.

20. Operations Bulletin No. 326, issued August 22, 1968 by the National Director of Selective Service, as amended October 23, 1968.

21. Quoting from a letter issued by the United States Army Recruiting Command "clarifying previous * * * letters on the * * * subject [of unauthorized delay of induction]." Bulletin No. 326, signed by the National Director of Selective Service, reproduces this letter in toto.

22. Inspection of DD Form 47 (Record of Induction) also indicates that complete reprocessing of a registrant who is delayed because of undetermined medical acceptability, such as might be expected to be required if a new order to report was necessary, is not contemplated by the regulatory scheme. The first two sections of this form are filled out by the local board, and since AR 601–270 provides that the form is to be held for later completion, rather than destroyed or returned to the local board, it is evident that complete reprocessing of the registrant is required neither of the local board nor of the induction station.

order to report for induction and that the whole intent of sub-paragraph *b.* is to require the board to reprocess a registrant, the determination of whose medical acceptability is deferred; and that such reprocessing be accomplished by the issuance of a new SS Form 252, order to report for induction. However, it seems to us that this sentence means only that the registrant will be notified by his local board of his new reporting date after his physical examination has been satisfactorily completed. This ties in with the phrase earlier in sub-paragraph *b.*: "The registrant will be advised that his acceptability for induction is undetermined pending the above determinations and that *he will be further advised by his Local Board.*" This is consistent with the idea that all information to the registrant is to come from one source, his local board.

It may be helpful to look at what actually occurred here in the case of appellant. He was ordered to report for induction (SS Form 252) by local board 89 on September 12, 1969. The reporting date of October 1st was subsequently delayed more than once, at times because of appellant's request and at times for the board's convenience. However, subsequent to the issuance of the formal order on Form 252 the board communicated with the registrant by simple letter, not by any particular formal order. For example, the board's letter of December 11 rejected the claim for a I–O classification, and stated, "[y]ou[r] Induction Order, therefore, is still in effect. You will be advised by letter when and where to appear for Induction into the U.S. Armed Forces." On December 19th the board wrote a simple letter stating "You are hereby ordered to report for induction * * * on January 15, 1970." This was the instruction to report at a certain time and place, which appellant had no difficulty in accepting as being unquestionably valid and obligatory on him, and this was a letter of instruction by the local board, based on the continuing validity of the September 12 "Order to Report for Induction" on Form 252. Subsequently, on February 18, local board 89 sent a similar simple letter stating "You are hereby ordered for induction into the U.S. Armed Forces of the United States [sic] and to report * * * on March 2, 1970."[23] It was thereafter that appellant asserted that he must receive a new formal order 252 from the local board and that this new order had to be based on the new random selection regulations, since somehow his reporting on January 15 had exhausted the authority of the previous order for induction which hitherto had been in full force and effect. We see no difference between the effect of the letter of December 19, advising of a new date and place of induction on the basis of the order of induction of September 1969, on Form 252, still in full force and effect even as construed by appellant, and the same form of letter dated February 18, which was likewise based by the local board on the previous order of induction of September 1969 being in full force and effect. Each of these letters written by the board to the appellant merely rep-

---

23. In one respect the procedure specified in sub-paragraph *b.* was not followed. Appellant's counsel stipulated at oral argument, and it is apparent that as a predicate for the validity of the SS Form 252 Order to Report for Induction of September 12, 1969, that at some previous time a DD Form 62 on appellant's physical acceptability was issued. If this is true, although it does not appear in the record, then the sending of another DD Form 62 "Statement of Acceptability," which was done on February 17, 1970 after appellant's physical examination had been completed at Walter Reed, was superfluous and contrary to the Army regulation. *See* note 12, *supra.* It certainly was not intended to lay the predicate for a new SS Form 252, Order to Report for Induction, because this would have required an interval of 21 days before such an order was issued. On the following day, February 18, as had been used previously, an informal letter ordering the appellant to report was sent by local board 89, obviously as before, on the assumption that the formal SS Form 252 Order to Report for Induction of September 12, 1969, was still in full force and effect.

resents advising him of a new time and place of reporting pursuant to the previously existing order, although the board uses the language in the letter "you are hereby ordered," which apparently would conform with the last sentence of subparagraph *b.* of AR 601–270, paragraph 3–31.

We therefore conclude that appellant's induction order was not cancelled or in any way terminated by the delay of his induction resulting from his physical condition being found medically undetermined on January 15, 1970.

### III.  APPELLANT'S OTHER CLAIMS

1. Appellant has also complained that his classification as I–A–O instead of I–O was without a basis in fact.  This claim is plainly barred from pre-induction review by Clark v. Gabriel.[24]

2. Appellant further contends that the Military Selective Service Act of 1967 is limited by Article I, Section 8, Clause 12 of the Constitution to a term of two years, and therefore expired on June 30, 1969.

We treat this issue on the merits because we find that, as it is wholly frivolous, we can resolve it expeditiously. For this reason, a three-judge statutory court[25] normally called for by this type of question is not required.  Also for this reason pre-induction review is appropriate.[26]

Article I, Section 8, Clause 12 of the Constitution provides as follows: "The Congress shall have power  *  *  *  to raise and support Armies, but no Appropriation of Money to that Use shall be for a longer Term than two Years *  *  *."

Since in our view the Military Selective Service Act of 1967 is in no way an "Appropriation of Money," we resolve this issue against appellant.

3.  Finally, in his response to the Government's petition for rehearing, appellant represents that since the issuance of our opinion of March 16, 1971, he has had occasion to examine his Selective Service file and has discovered therein certain documents which indicate that his induction order of September 12, 1969, may have been cancelled by National Headquarters of Selective Service sometime around November 5, 1969.[27]

Appellant therefore asserts that his November 22, 1969, claim for I–O status was not, as has been supposed throughout this litigation, a *post*-induction order claim now governed by Ehlert v. United States, but rather a *pre*-induction order claim, entitling him to a reopening upon presentation of a prima facie case.  See Mulloy v. United States.[28]  This claim, and the facts necessary to support it have never been presented to the District Court.  It is thus not properly before us for decision and we decline to pass upon it in any way.

The opinion and judgment of this court of March 16, 1971, and the order of this court of April 13, 1970, staying appellant's induction into the Army will accordingly be vacated, and the judgment of the District Court of April 13, 1970, will be

Affirmed.

---

24.  393 U.S. 256, 89 S.Ct. 424, 21 L.Ed. 2d 418 (1968).

25.  28 U.S.C. § 2282.  *See* Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed. 2d 512 (1962) ;  Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1934).

26.  Shea v. Mitchell, see note 15, *supra.*

27.  Appellant had also alluded to this discovery in his petition for rehearing filed March 29, 1971, which was denied by this court on April 16, 1971.

28.  398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed. 2d 362 (1970).