**UNITED STATES of America, Appellee,**

v.

**William Paul ALIOTO, Defendant, Appellant.**

**No. 72–1055.**

United States Court of Appeals, First Circuit.

Heard Sept. 12, 1972.

Decided Nov. 24, 1972.

---

Gordon A. Martin, Jr., Boston, Mass., by appointment of the Court, for appellant.

Henry H. Hammond, Asst. U. S. Atty., with whom Joseph L. Tauro, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and HAMLEY*, Senior Circuit Judge.

COFFIN, Chief Judge.

■ Appellant appeals from a conviction under 50 U.S.C. App. § 462 for refusing induction into the Army. Among several grounds for reversal,[1]

---

1. Appellant raised the "order of call" defense in the court below, alleging that he was drafted when he was because his local board improperly passed over qualified older registrants. His claim on this point presents a question which seems to be one of first impression: what is a "call" for the purposes of the order of call defense? Appellant points out that his local draft board does not order all of its draftees at one time during the month, but rather divides its monthly quota into five "contingents". He then argues that since the pool of registrants is changing during the month, and since the several contingents are not prepared on the same day but rather are prepared from time to time during the month, the court should use the particular contingent, in appellant's case the second contingent, in assessing the merits of the order of call defense. The government, on the other hand, argues that the "call" is the regular monthly requirement imposed on local boards by the State Director and that the contingent system is merely an administrative convenience designed to prevent crowding at induction centers. Since we dispose of this case on other grounds, we need not reach this question. We do, however, suggest that the state and local

appellant contends that his induction order was invalid because his local draft board failed to state its reasons for refusing to reopen his classification after he had asserted a post-induction notice claim of conscientious objection. For reasons stated below we find that in view of the particular combination of circumstances in the case before us his point is well taken. Hence we reverse his conviction.

■ On January 28, 1969, Local Board No. 44, Fort Lauderdale, Florida, mailed appellant a notice to report for induction. Approximately two weeks later he appeared at his draft board and requested an application for conscientious objection status (SSS Form 150). The board issued a Form 150 to him, and several days later he returned the completed form to the draft board; he also submitted letters from two doctors in an attempt to secure a medical deferment. The Form 150 submitted indicated a deep-seated moral and ethical opposition to all wars, thus establishing a prima facie claim to conscientious objector status under Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). Appellant's statement did not, however, state explicitly when his views "crystallized".

Prior to February, 1969, appellant had never presented a conscientious objection claim to his draft board. On September 10, 1968, he completed a "change in status" report but made no mention of the feelings he set forth in his Form 150. The Form 150 did not, of course, pose a question directly addressed to time of crystallization, it being a general purpose conscientious objector form. Appellant's answer to the question inquiring "how, when and from whom" he acquired his belief exhibits an eclectic development over time, drawing on early religious training, the influence of high school teachers, readings in philosophy, and post-school travelling and working experiences where he met "people of all kinds". All were said to have contributed to his present belief. When his resulting beliefs reached the state described in his Form 150 is not discernible but his statements there would not have precluded him from claiming, with consistency, at his subsequent interview that his beliefs matured in their present form and intensity only after receiving the notice to report.

■ On February 19, a day after receiving appellant's Form 150, the board conducted a courtesy interview with him and his father. The brief minutes reveal that the timing, content, and sincerity of his beliefs were discussed as well as recent medical complaints. Following the interview the board, without indicating its reason, voted 4–0 not to reopen appellant's classification. As to the time when his beliefs crystallized, we have only the notation, "He [appellant] stated his beliefs appear to date back a while & that some of his beliefs were formed about the time he attended . . . High School." This summary is not inconsistent with the account given in the Form 150. Had the minutes reflected a clear statement that the registrant's belief as now articulated was formed before he received his notice, it might readily be inferred that the board concluded that appellant's case, even if prima facie, could not be reopened because it could not meet the timing requirement, i. e., could not be said to be a recent "change in the registrant's status" as required by 32 C.F.R. § 1625.2, see n. 4, infra. But the minutes also revealed notations that a teacher had influenced appellant most and that "he would fight for what he believes in", which might well indicate board consideration of the substance of his beliefs. Since no reason was given for the decision, one cannot tell whether

---

boards might satisfy their legitimate goals of administrative convenience in a manner which would remove any doubt as to whether "order of call" doctrine was being faithfully implemented. Selecting the entire monthly "call" on one day, and then simply mailing letters with several different reporting dates would satisfy both the needs of the draft system and the contentions of draftees like appellant.

timing, content, or lack of sincerity was the basis for decision.

Two recent decisions of the Third Circuit, announced after the decision below, have treated similar facts and found them sufficient to justify reversal of convictions under 50 U.S.C. App. § 462. See United States v. Shomock, 462 F.2d 338 (3d Cir. 1972); United States v. Ziskowski, 465 F.2d 480 (3d Cir. 1972).[2] In *Shomock* and *Ziskowski*, as in the case here, appellants had received their notices to report for induction, and had shortly thereafter asserted conscientious objector claims to their draft boards. In both cases the draft boards granted courtesy interviews to the registrants. And in both cases the draft boards refused to reopen the registrants' classifications without stating their reasons for their decisions. The court held in

both instances that the board's failure to state reasons in these particular circumstances rendered the induction order invalid and dictated acquittal of draft evasion charges. While we reach the same result as did the *Shomock* and *Ziskowski* courts, we deem it advisable to elaborate the bases of our own decision.[3]

32 C.F.R. § 1625.2 (1971) allows a draft board to reopen a registrant's classification after a notice of induction has been sent if the registrant states a prima facie case for his requested classification and if the board finds that the registrant's status has changed since receipt of his induction notice due to circumstances beyond his control.[4] Prior to Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), there was disagreement over whether a "late crystallizing" conscientious objec-

2. *See also* United States v. Cotton, 346 F. Supp. 691 (S.D.N.Y.1972).

3. We find the opinion in *Ziskowski* more persuasive than the opinion in *Shomock*. The *Shomock* court opinion relies, as does appellant, on a comparison of two versions of Army Regulation 635–20(3)(b) (1) to create the possibility of a "no-man's land". When appellant was drafted, the 1969 AR 3(b)(1) was in effect. It precluded Army consideration of claims "based solely upon conscientious objection which existed but was not claimed prior to induction, enlistment, or entry on active duty or active duty for training." In 1970 3(b)(1) was changed and the words "notice of induction" replaced "induction".

We feel that both versions of 3(b)(1) deal with the situation of a man in the Army who has not yet raised his claim. It is a waiver provision which sets out the circumstances under which an inductee may raise conscientious objection which arose before induction. The 1970 change is a liberalizing one, but it merely provides that the inductee is not automatically barred from raising in the Army conscientious objection claims which arose after receipt of notice of induction but before actual induction.

We fail to see, however, how the change has any relevance to the instant case. When appellant was drafted, the Army would not have granted him a hearing if his conscientious objection "was not claimed prior to induction". Since appellant *did* claim conscientious objection prior

to induction, the Army could not have used 3(b)(1) to dodge his in-service claim. But 3(b)(2) does address appellant's situation, because it related to objection "claimed and denied" by the Selective Service System. Similarly the Army could not now use 1970 AR 3(b)(1) to bar consideration of a late crystallizing claim, because a late crystallizer's claim does not exist before notice of induction. But again 3(b)(2) could have been used, before the 1971 *Ehlert* decision, to bar the claim raised after receiving notice if the Army could have read an unreasoned refusal to reopen as a "denial". Thus it is the question of 3(b)(2) which we find to be critical, and it is on our interpretation of that section which we rest our decision.

4. 32 C.F.R. § 1625.2 provides:

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant . . . if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification . . . provided . . . the classification of a registrant shall not be reopened after the local board has mailed to such registrant an order to report for induction . . . unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant has no control."

tion could ever be a change "over which the registrant has no control". Thus some draft boards refused to consider the merits of conscientious objector claims asserted between the date notice of induction was sent and the date of scheduled induction on the grounds that § 1625.2 denied them jurisdiction of the claim. Other draft boards, reading § 1625.2 as permitting the consideration of late crystallizing claims, heard such claims on their merits. In *Ehlert*, the Supreme Court adopted the Selective Service's position that § 1625.2 should be reserved for those post-induction notice claims that asserted some "objective" change in circumstances. Thus the Court relieved the draft system of the processing of late crystallizing claims; presumably draft boards have not considered any such claims since *Ehlert*.

The Court in *Ehlert* reasoned that the late crystallizer must have some forum for his conscientious objection claim but that a post-induction, in-service forum was sufficient. It then examined Army regulations to see if the Army would be receptive to such claims. Although it found the regulations ambiguous, it concluded, on the strength of a letter from the General Counsel of the Army, that at the time Ehlert was drafted it was the practice of the Army to hear such claims.

On the face of it, *Ehlert* would seem to govern appellant's case; indeed, the government has argued that on the *Ehlert* reasoning, the Army would have been obliged to hear appellant's claim, which was asserted prior to the *Ehlert* decision itself. We find, however, as did the courts in *Shomock* and *Ziskowski*, that the case at bar is distinguishable from *Ehlert*.[5]

In *Ehlert*, the draft board stated that it did not reopen because the asserted change in the registrant's conscience was not a change "over which the registrant has no control". Thus Ehlert's board clearly did not reach the merits of his conscientious objection claim but rather disposed of it on the "jurisdictional" grounds of § 1625.2. But in appellant's case, since no reasons were given for not reopening following the interview at the draft board, it is impossible to determine if the draft board's decision was "jurisdictional" or on the merits. Indeed, there are several articulations of the unexpressed premise underlying the board's decision not to reopen: (1) after questioning him at the interview, the board could have found that his conscientious objection did not crystallize after receipt of the induction notice, *see* Paszel v. Laird, 426 F.2d 1169, 1174–1175 (2d Cir. 1970); (2) it could have found that he was not sincere in his beliefs; (3) it might have found that his claim did not meet the minimum conscientious objector standards either because the board was acting without benefit of the Supreme Court's decision in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); *see* United States v. Fargnoli, 458 F.2d 1237 (1st Cir. 1972), or because it found that he was not opposed to all wars; (4) or it could have found that he was a genuine late crystallizer but that late crystallization was not a permissible ground for reopening under § 1625.2. *See Ziskowski, supra,* 465 F.2d at 482.

This ambiguity of the draft board's disposal of appellant's claim takes the case beyond the reach of *Ehlert*. It remains to be seen, however, if the ambiguity of the board's decision might have deprived appellant of a hearing on his conscientious objector claim. Thus we must now determine how the Army might have reacted to the board's decision had appellant entered the Army and pursued his conscientious objector claim in the service.

---

5. Several cases in other circuits have ruled that *Ehlert* does control the type of case presented both there and in *Shomock* and *Ziskowski*. *See, e. g.,* Swift v. Director of Selective Service, 145 U.S.App.D.C. 224, 448 F.2d 1147 (1971); Wright v. Ingold, 445 F.2d 109 (7th Cir. 1971). However, the material distinction that we find between *Ehlert* and the present case was apparently neither argued nor considered in any of the previous cases.

Army Regulation 1970 AR 3(b)(2) reads "Requests for discharge after entering military service will not be accepted when . . . based solely on conscientious objection claimed and denied by the Selective Service System prior to induction." If the Army had read the draft board's decision as a denial on the merits, and if in actuality the draft board had decided the case on jurisdictional grounds, appellant would have been caught in a "no-man's-land" that the *Ehlert* Court indicated would be intolerable. 402 U.S. 99, at 107, 91 S.Ct. 1319, 28 L.Ed.2d 625. In other words, if the Army could have read the draft board's reasonless refusal to reopen as a "denial" then appellant might well have been placed in a mutual buckpassing situation where neither the draft board nor the Army would consider his claim on the merits.

In order to interpret Army Regulation 1970 AR 3(b) both the Supreme Court in *Ehlert* and the Third Circuit in *Shomock* requested clarifying letters from the Army's General Counsel. The government here claims that these letters effectively remove the possibility of a "no-man's-land" in appellant's case; we agree with the Third Circuit that the letters do not clear up the ambiguity.

In the *Ehlert* letter, the Army stated it would hear the claims of all "late crystallizers". Without more, this would seem to be an inclusive statement, making draft board action—on the merits or otherwise—irrelevant. If this were so, appellant, as well as Ehlert, had a remedy in the Army. But the Army's letter did not explicitly deal with the situation where the draft board hears the conscientious objection requests but refuses to reopen. In the *Shomock* letter, the Army does face the question and states that if the board had reached the merits of the claim, the Army would have considered the claim "denied" and would have provided no "in-service" forum; conversely, if failure to reopen was based on the grounds that late crystallization, even if genuine, could not qualify as a change of circumstances under § 1625.2, then the Army would not have considered the claim "denied" and would have granted the inductee a hearing.[6] Neither of these letters assures us that an inductee whose draft board, after receiving a Form 150 and conducting a courtesy interview, had refused to reopen his classification without giving him reasons, would have been granted a hearing in the Army.

Thus we conclude that *Ehlert* does not control in this case. We see two sets of circumstances that could have prejudiced appellant. The Army might have read the board action as a denial on the merits while the board had actually disposed of appellant's claim on jurisdictional grounds.[7] In this situation, appellant,

6. In *Shomock*, the relevant events took place in March and April of 1969, only two months after the events in appellant's case. We thus consider the letter submitted by the Army in *Shomock*, which sets out Army practice as of the time Shomock was drafted, to be equally applicable to the case at bar.

The letter submitted by the Army's General Counsel in *Shomock*, unfortunately, on the point important here, says two quite different things. In a preliminary paragraph the General Counsel phrases the question as whether the draft board denied the claim on the merits or whether it "declined to reopen his classification". While this may suggest that any failure to reopen would not be a basis for denying an in-service hearing, the General Counsel's more specific statement in the "business" part of the letter, as summarized above, clearly reflects the possibility that an unelaborated refusal to reopen might be construed as a denial and might thus expose the registrant to a "no-man's-land". Since the General Counsel has had adequate time to correct any misleading ambiguity, we feel no reluctance in holding him to that part of the letter which contains the formal opinion of the Army.

7. Admittedly the board's note in its minutes that appellant stated that "his beliefs appear to date back a while" supply some evidence that the board did not deem this a case of late crystallization and thus beyond its jurisdiction. But this statement, in the light of appellant's Form 150, is not so clear as to allow us—or the Army

even if he had stepped forward for induction, would have received no substantive hearing at all on his conscientious objector claim. The *Ehlert* Court explicitly stated that any such situation would be unacceptable and would justify reversal of conviction. 402 U.S. at 107, 91 S.Ct. 1319, 28 L.Ed.2d 625.

On the other hand, the Army might have been correct in reading the board action as a decision on the merits. If we assume that the board did indeed decide the claim on the merits, appellant would not have been entitled to a hearing in the Army. Under this assumption, Army reaction to the draft board's action becomes irrelevant; appellant would have had his hearing and hence his "no-man's-land" argument would fail. But the necessary corollary of this assumption is that appellant was entitled to a statement of reasons why his draft board refused to reopen. For once we assume that appellant was not entitled to a hearing in the Army, we must pass at this time on the adequacy of the draft board action. This we cannot do without a statement of reasons. Just as in other situations where the Selective Service denies conscientious objector claims, *see* United States v. Edwards, 450 F.2d 49 (1st Cir. 1971), a statement of reasons is necessary for effective judicial review of the draft board's action. In appellant's case there are several possible bases for the board's decision not to reopen, and if the board made a decision contrary to law, the induction order was not valid. *See* Scott v. Commanding Officer, 431 F.2d 1132 (3d Cir. 1970). For example, the draft board

might have made decision (3) *supra,* feeling that appellant's beliefs were not of sufficient character to warrant conscientious objector classification. As indicated above, this decision might have been impermissible under the standards enunciated in Welsh v. United States, *supra.* But without a statement of reasons we cannot determine if this or some other finding was made by the board, and hence we cannot endorse their action by upholding the validity of the induction order. Hence we conclude that the induction order was invalid and appellant's conviction must be reversed.

Appellant raised a number of other issues on appeal . He challenged the district court's rejection of his profered violations of the order of call; he claimed that his conviction was improper because each member of his local board may not have given individual consideration to his file at the time he was classified; he charged that the local board should have reopened his classification to consider his medical complaints, or alternatively, that the board reopened his classification *de facto*, thus denying him the procedural rights customarily associated with a reopening; and he asserted that the district court erred in failing to hold a hearing on the selection process for the grand jury which indicted him. Since we decide the case on other grounds, we need not reach these other issues.

We hold that the induction order was invalid and that consequently, appellant's conviction must be reversed. The Local Board is, of course, free to reprocess him for induction.

—to draw a firm conclusion. *Compare* United States v. Curry, 410 F.2d 1297 (1st Cir. 1969). Moreover, to the extent that important judgments as to opening or denying a forum to a serviceman are allowed to be based on speculation as to the meaning of inconclusive fragments of draft board minutes, there is a risk of creating a no-man's-land, here as a result of one jurisdiction guessing at the ground relied on by another.