**UNITED STATES of America,
Appellee,**

v.

**Stephen William JERROLD,
Defendant, Appellant.**

**No. 72–1320.**

United States Court of Appeals,
First Circuit.

Argued March 5, 1973.

Decided June 29, 1973.

Stephen W. Silverman, Springfield, Mass., for appellant.

Robert B. Collings, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

PER CURIAM.

■ Defendant appeals from conviction under 50 U.S.C. App. § 462(a) of a refusal to submit to induction into the Armed Services of the United States on September 22, 1970. Because the issue is dispositive, we consider only whether the order to report for induction on that date was rendered invalid by the Local Board's action on September 9 and 10, 1970, declining, without statement of reasons, to reopen defendant's classification in light of his conscientious objection claim raised after he had been ordered to report for induc-

tion. Under United States v. Alioto, 469 F.2d 722 (1st Cir. 1972), we hold that the induction order was invalid, and accordingly we reverse.

Defendant held a II–S (student) deferment from October 24, 1967 to December 10, 1969. In the interim, he had married, become a father, and subsequently dropped out of school. The Local Board rejected his request for a III–A (hardship) deferment, and classified him I–A on December 10.

After receiving his notice to report for induction on August 18, 1970, defendant stated his intention to apply for conscientious objector status. Accordingly, his induction was postponed until September call.. On September 9, 1970, defendant was granted a "courtesy interview"[1] by the Board regarding his C.O. beliefs, at which time he submitted his completed Form 150, together with an explanatory letter. The letter stated that "events have happened over the past few years which have given me a new view of life and its value . . . My wife and I . . . gave birth to a new life which has become part of us . . . For this reason I could not take that life away from another human being . . °. ." At the courtesy interview, defendant was questioned regarding the nature of his C.O. beliefs, and when they had crystallized. To the latter question, he responded that there was "[n]o single incident, but over a period of time since I've been married."

In its report of the September 9, 1970, interview, the Board concluded that it "did not feel that the · information presented warranted the reopening of the registrant's. classification or a further postponement of induction." It so notified him by letter the following day. Defendant was ordered in the same letter to report for induction on September 22, 1970; he appeared, but declined to

step forward. For that refusal he was ultimately convicted in the instant case. On September 25, defendant wrote that he would like to appeal the Board's decision; he was advised that there was no basis for an appeal "[d]ue to the fact that there has been no classification action since February, 1970."

On December 2, 1970, State Selective Service Headquarters advised the Board to reopen and consider defendant's classification anew to avoid "the issue of 'de facto' reopening which could arise from your action of September 10, 1970. At this time you apparently considered the merits of Mr. Jerrold's post-induction order claim of conscientious objection." Without notifying defendant, the Board reopened his classification on December 10, 1970 and re-classified him I–A.

██ In Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), the Court held that local boards need not reopen classifications where C. O. claims are advanced after the registrant received his induction notice, but before the induction date. See 32 C.F. R. § 1625.2 (1971). The Court's rationale was that Army regulations would permit the- "late crystallizing" C.O.'s to advance their claims from within the Army. While late crystallizers may not be deprived of a "full and fair opportunity to present the merits of their conscientious objector claims," Id., 103, 91 S.Ct. 1323, they may be required to wait.

At first glance Ehlert might seem to support the Board's action here. However, in United States v. Alioto, supra, 469 F.2d 722, on facts much like those here, we held that the failure of a draft board, after a courtesy interview, to give reasons for its refusal to reopen rendered the induction order invalid. We were unable to tell from the sparse record whether the Board declined to reopen because of the Ehlert "jurisdic-

---

[1]. A "courtesy appearance" is authorized by 32 C.F.R. § 1625.1(c) (Supp.1970) and is to be distinguished from a "personal appearance" which defendant would have

been entitled to had the Board decided to reopen his classification. See 32 C.F.R. §§ 1625.13 and 1624.1 (Supp.1970).

tional" rationale or for some other reason, such as its belief that a meritorious claim was not established.[2] We declined to approve action leaving Alioto in a no-man's land in which his conscientious objection claim might later be denied review by the Army on the assumption that the Board had already considered and rejected it as without merit. Were the latter assumption true, there could be no meaningful judicial review without a statement of reasons. *Alioto, supra,* 727–728. *See* United States v. Edwards, *supra,* 450 F.2d 52. Registrant's position was distinguishable from Ehlert's, as the latter's board "clearly did not reach the merits of his conscientious objection claim but rather disposed of it on the 'jurisdictional' grounds of § 1625.2." *Alioto, supra,* 469 F.2d 726.

Here the record of the Board's action is infected with the same ambiguity as in *Alioto.* In fact, State Selective Service Headquarters itself later wrote, on December 2, 1970, that the Board had "apparently considered the merits" of Jerrold's C.O. claim. While the Board stated both in its minutes and notification to defendant that it had decided not to reopen, one cannot tell whether its decision was grounded on a finding that the claim was intrinsically lacking in merit, on a finding that it was stale, or on a finding that Jerrold's claim had crystallized late and was accordingly, for reasons affirmed in *Ehlert,* beyond its jurisdiction. The situation is further clouded by the fact that in 1970, before *Ehlert,* different boards held differing views of the extent of their responsibility to consider C.O. claims advanced after an order to report was issued. *See Alioto, supra,* 726. We cannot realistically assume that the Board relied upon the narrow jurisdictional grounds approved later in *Ehlert.* Thus for the reasons set out more extensively in *Ali-*

oto, we conclude that the order to report for induction on September 22, 1970, was invalid. Defendant's present conviction must therefore be reversed.

The Government's reliance upon United States v. Hosmer, 434 F.2d 209 (1st Cir. 1970), is misplaced. Hosmer first claimed C.O. status after his refusal to submit to induction. Jerrold never admitted to the validity of the September 22, 1970, induction order, having asserted his C.O. claim prior to that time. A number of other First Circuit cases can be distinguished for the same reason. *See* United States v. Stoppelman, 406 F.2d 127 (1st Cir. 1969); United States v. Daniell, 435 F.2d 834 (1st Cir. 1970); United States v. Pringle, 438 F.2d 1216 (1st Cir. 1971).

Reversed.

---

2. As in *Alioto,* defendant's Form 150 and explanatory letter indicated on their face a deep-seated moral and ethical opposition to all wars sufficient to establish a *prima facie* case. *Alioto, supra,* 724; Welsh v. United States, 398 U.S. 333, 90 S.Ct.

1792, 26 L.Ed.2d 308 (1970); United States v. Edwards, 450 F.2d 49 (1st Cir. 1971). Had his claim failed to state a *prima facie* case, *Alioto's* relevance would be doubtful. *See* United States v. Ford, 1st Cir., 478 F.2d 169, 172 (1973).