UNITED STATES of America,
Appellee,

v.

Stephen William **JERROLD**, Defendant-Appellant.

No. 72–1320.

United States Court of Appeals,
First Circuit.

Submitted Dec. 14, 1973.

Decided Jan. 11, 1974.

Stephen W. Silverman, Springfield, Mass., for defendant-appellant.

Robert B. Collings, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Jerrold's conviction for refusal to submit to induction in violation of 50 U.S.C. App. § 462(a) was reversed by this court, 480 F.2d 1293 (1st Cir. 1973). After notice of order to report for induction had been mailed to Jerrold but before he had refused to submit thereto, the Local Board had granted him a "courtesy interview" on his post-notice claim for conscientious objector status, and had thereafter refused to reopen his classification. Since it was unclear whether the Local Board had failed to reclassify for jurisdictional reasons, *see* Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971) or had decided the claim on the merits, we declined to hold that Jerrold could be placed in a "no-man's land in which his conscientious objection claim might later be denied review by the Army on the assumption that the Board had already considered and rejected it as without merit." 480 F.2d at 1295.

The United States filed a petition for rehearing. Subsequently we granted its motion to stay action on the petition for rehearing until the Supreme Court acted in Musser v. United States and Waldron v. United States, for which certiorari petitions had then been filed but not acted upon. The Supreme Court has now decided these cases, 414 U.S. 31, 94 S. Ct. 196, 36 L.Ed.2d 190 (1973) (per curiam), making it clear that under 32 C.F.R. § 1625.2 (1971) as construed in *Ehlert*, a Local Board is without any power to reopen in late crystallization conscientious objector cases and that, therefore, the Army could not deem "an expressed or unexpressed indication of the Board's views of the claim . . . a denial of those claims on the merits." *Id.* at 38, 94 S.Ct. at 201. Because consideration of Jerrold's claim would not be foreclosed, the no-man's land problem disappears. *Id.* at 40, 94 S.Ct. 202. (Douglas, J., dissenting).

Although the Supreme Court's decisions would appear to have eliminated the sole ground upon which we reversed Jerrold's conviction, he now seeks to distinguish his case on the ground that the State Director himself, acting under since-rescinded 32 C.F.R. § 1625.3, had later recommended a reopening of his classification. *See Musser, supra* at 31, 94 S.Ct. 196 n. 6. We do not see how the State Director's recommendation to the Local Board, made two months after Jerrold had failed to submit to the induction order in question, was relevant to the prior validity of that order.

Following its second consideration, the Local Board, on December 10, 1970, reopened Jerrold's classification and reclassified him I–A. A second order to report for induction was mailed on January 26, 1971. Jerrold claims that the subsequent reopening and second induction order turned his post-induction order conscientious objector claims into pre-induction ones, thus avoiding the *Ehlert* problem. *See* White v. United States, 422 F.2d 1254 (9th Cir. 1970). But Jerrold was indicted for failure to submit to induction on September 22, 1970. At the time Jerrold refused to submit, his post-induction order conscientious objector claim could not on any theory have been a pre-induc-

tion one. The reopening and issuance of the second order did not cancel a prior violation of law. United States v. Hosmer, 434 F.2d 209 (1st Cir. 1970). "[O]nce a valid order to report for induction has been wilfully disobeyed, a crime has been committed, and '[w]hat occurs after refusal . . . is not relevant to that issue.'" United States v. Powers, 413 F.2d 834, 838 (1st Cir.), cert. denied, 396 U.S. 923, 90 S.Ct. 256, 24 L.Ed.2d 205 (1969). *Accord,* Palmer v. United States, 401 F.2d 226 (9th Cir. 1968). We find no merit in any of Jerrold's attempts to distinguish his situation from that well-settled rule.

██ Jerrold made other challenges to the legality of the induction order which we did not discuss in our previous opinion. Jerrold asserted that he made out a *prima facie* case for a hardship deferment. On December 4, 1969, Jerrold, who was then classified II–S, Informed the Local Board by letter that he had left school and requested a hardship deferment. The Board had previously been advised of his marriage and the birth of a child. The Local Board rejected, without reasons, Jerrold's hardship claim, and advised him by mail of his rights to personal appearance and appeal. Several days later he wrote to the Board indicating his wish to appeal and requesting a dependency questionnaire form, with which he said he would provide the Board "additional information not enclosed in my previous letter." Although the Board mailed the form to Jerrold, he never returned it, nor did he forward further information or request a personal appearance. On January 15, 1970, the Local Board forwarded his file to the State Appeal Board which upheld his classification. Jerrold's December fourth letter, the only evidence of hardship received by the Local Board, does not contain sufficient factual information indicating that "induction into the armed forces would result in extreme hardship (1) to his wife . . . child . . . ." 32 C.F.R. § 1622.30(b) (1967). *See* 50 U.S.C. App. § 456(h).

"The test is not inconvenience, or even hardship, but extreme hardship." Weissman v. Officer of the Day, 444 F. 2d 1326 (2d Cir. 1971). The financial data in the letter to the Board consisted of Jerrold's monthly salary and his assertion that "[t]his money goes for our rent and food of which a large part is needed for my son." There was no itemized breakdown of living costs or debts. Two outstanding debts totalling $580 were mentioned, but no repayment schedule provided. The Board was not told that there were no other viable sources of income, such as relatives or savings. *See* Winfield v. Riebel, 438 F. 2d 271, 278 (6th Cir. 1970). Jerrold's conclusion that his armed services salary would put "a considerable financial strain" on his family does not assert a financial hardship greater than that experienced by many forced to leave civilian life. In the absence of evidence concerning the degree of stress, the Board did not abuse its discretion. Furthermore, since a *prima facie* case was not made out, the Local Board did not act improperly in failing to state its reasons when it classified Jerrold I–A. United States v. Edwards, 450 F.2d 49 (1st Cir. 1971).

Jerrold next says the Board acted improperly in not reopening his I–A classification on the basis of information, including a letter from Jerrold, indicating possible physical and mental disabilities. After Jerrold was classified I–A, he was examined at the Armed Forces Examining and Entrance Station (AFEES) on April 15, 1970. At this time he completed Standard Form 89 (Report of Medical History), stating that he was troubled by several ailments, including nervous disorders, depression, nightmares, "trick" knee, dizziness, and a drug habit. Subsequently Jerrold was examined by a psychiatrist at AFEES who noted on the Clinical Record/Consultation Sheet that Jerrold used a variety of drugs and that some of his symptoms are drug effects, but nonetheless concluded that Jerrold was fit for duty. Shortly afterwards, Jerrold wrote to the Local Board re-

questing an interview with the Medical Advisor "as I have certain medical defects which are listed as disqualifications for service in the Armed Forces" and also requesting an interview with the government appeal agent. On June 19, 1970, Jerrold was found fully acceptable for induction by AFEES. There was testimony from the Executive Secretary of the Local Board that it could be inferred from the Board's notation on Jerrold's letter concerning his medical defects that he was informed, on June 26, 1970, that he should submit any additional medical information to the Board, that he was not entitled to an interview with the medical advisor, *see* 32 C.F.R. §§ 1628.1, 1628.4(c), (e) (1967), and was supplied with the name of the appeal agent so that he could contact him for an interview. Jerrold failed to follow this recommended course of action. Jerrold's contention that such a response from the Local Board was a denial of due process is patently frivolous. On July 7, 1970, AFEES requested the Local Board to return Jerrold's medical papers for further medical evaluation, reporting later that month that the acceptability determination remained unchanged.

██ In United States v. King, 455 F.2d 345, 349 (1st Cir. 1972), we held that neither the compendium of symptoms checked off by a registrant on Standard Form 89 nor the AFEES' doctor's report were sufficient to make out a *prima facie* case entitling the registrant to reopening. Obviously neither Jerrold's notations on Standard Form 89 and his brief reference to phychological addiction "to some drugs" on his Statement of Personal History, nor the record of the psychiatric examination, were sufficient to require the Board, on its own initiative, to reopen; the Board was entitled to accept AFEES' evaluation at least until further information was brought to its attention. Jerrold's later letter, even if construed as a request for reopening, added nothing. It

did not even identify the medical defects upon which Jerrold relied. The Board could not know whether he was relying upon defects already inquired into by AFEES or upon new ones. *Cf.* United States v. Stockwell, 485 F.2d 700 (1st Cir. 1973); United States v. Ford, 431 F.2d 1310 (1st Cir. 1970). The test for a *prima facie* case for classification, which if met eliminates the Board's discretion on reopening, is the assertion of "nonfrivolous allegations of facts that have not been previously considered by his board, and that, if true, would be sufficient under regulation or statute to warrant granting the requested classification . . ." Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 1771, 26 L.Ed.2d 362 (1969).

The only further information Jerrold furnished was a physician's letter dated September 18, 1970. (Jerrold refused induction on September 22, 1970.) A Report of Information in Jerrold's file indicates he informed the Board on September 28, 1970, that he had refused induction and had taken a letter to AFEES on the day of the induction. It is thus doubtful that the letter ever reached the Board before Jerrold's refusal to submit. *See* United States v. DeLiso, 468 F.2d 813 (9th Cir. 1972). In any event, it was submitted long after Jerrold received his notice to report. As the letter concerned his involvement with drugs, a subject already raised, it did not deal with a "change in the registrant's status resulting from circumstances over which the registrant had no control." 32 C.F.R. § 1625.2 (1971). The Local Board would have had no authority to reopen.

██ Jerrold also asserted that the Appeal Board may have lacked a quorum when it determined to classify him I–A by a vote of 2–0. *See* 32 C.F.R. §§ 1604.22, 1604.26 (1972). The issue was not raised below and the record does not reveal how many persons sit on the Appeal Board. Without such information, it cannot be determined whether or not a quorum existed.

The prior judgment of this court is vacated and our prior opinion is withdrawn.

The judgment of the district court is affirmed.