UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Haines WALDRON,
Defendant-Appellant.

No. 71–1230.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1972.

Decided Feb. 8, 1973.

Joseph Beeler, Federal Defender Program, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck, Theodore T. Scudder,

Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and PELL and STEVENS, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from a conviction for refusal to submit to induction in violation of 50 U.S.C. App. § 462. Defendant Waldron, a registrant of a Fort Wayne, Indiana board, attended the Art Institute of Chicago, graduating in June 1968. During his attendance there he received a II-S student deferment, 32 C.F.R. § 1622.25 (1968). In order to obtain that deferment he had executed Selective Service [SSS] Form 104, requesting an undergraduate deferment on September 18, 1967. Following his graduation, he was reclassified I-A, 32 C.F.R. § 1622.10 (1968), on July 2, 1968. He immediately appealed this classification requesting a III-A hardship deferment, 32 C.F.R. § 1622.30, but this appeal was rejected by both his local board and his appeals board. On December 30, 1968, Waldron was mailed his order to report for induction. The date scheduled was February 5, 1969.

Shortly thereafter, Waldron filed a form requesting conscientious objector classification. The local board notified Waldron on January 24, 1969, that it had considered his application but "found no grounds for reopening your classification." However, on January 28, 1969, Colonel Rhodes, the Indiana State Director of Selective Service, reviewed Waldron's file and recommended that "the local board give postponement and ask registrant in for interview as per LBM #41 [Local Board Memorandum 41]." The board thereupon sent Waldron SSS Form 264 stating that by authority of SSS Regulation 1632.2 Waldron's order to report for induction was postponed until February 19, 1969. A letter accompanied the form advising Waldron that he would be given an "interview" by the board on February 5, 1969. On February 6, the board sent Waldron two letters, the first advising him that it "found no grounds for reopening your classification after you [sic] being interviewed" and the second ordering him to report for induction on February 19, 1969. Because he was living in Chicago, Waldron had the order to report transferred to Chicago. On March 27, 1969, Waldron refused to submit to induction.

On this appeal Waldron raises two principal grounds for reversal: first, that his application for conscientious objector status was improperly denied, both substantively and procedurally; and second, that he was impermissibly precluded from obtaining a I-S(C) deferment, 32 C.F.R. § 1622.15 (1968), during the school year 1968–69 while he was in graduate school.[1] For the purposes of this appeal we will assume, *arguendo*, that Waldron did present a prima facie case for conscientious objector status. Our first determination is whether or not such a claim was barred by Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971).

Admittedly, if the induction notice of December 30, 1968, is deemed to be the controlling notice, then Waldron's conscientious objector claim was late and barred by *Ehlert*. To avoid the force of the *Ehlert* decision, Waldron argues that the order of December 30, 1968, was superseded by the letter of February 6, 1969, and, thus, his conscientious objector claim of January 1969 was timely filed. In support of his position, Waldron cites Rodriguez v. United States, 452 F.2d 659 (7th Cir. 1971), and White v. United States, 422 F.2d 1254 (9th Cir. 1970).

In *Rodriguez*, the defendant had failed to report for induction because of ex-

---

[1]. While we have categorized Waldron's contentions into two principal ones, his brief on appeal proposes numerous supportive issues of claimed error. The Government contends that some of these had been waived by being first raised on appeal. This is denied by Waldron. We do not find it necessary to reach the question of waiver.

tremely bad weather and consequently had been ordered to report a second time. This court held that the second order cancelled the first so as to make timely the defendant's application for a III-A classification filed before the second order to report was mailed. The *White* case presents a slightly different factual situation with the Ninth Circuit holding that a second order to report for civilian work following White's refusal to report superseded the prior order and made timely his III-A application. The Government urges us to distinguish these cases on the ground that they involved dependency claims based on "objectively identifiable" and "extraneous" circumstances beyond the registrant's control, as opposed, apparently, to a volitional claim. *Cf. Ehlert, supra,* 402 U.S. at 104–105, 91 S.Ct. 1319.

■ We think, however, that the clear answer here is that the postponement of Waldron's induction by the board as a result of Waldron's application for conscientious objector status was just that, a postponement, and as such no new order issued on February 6. The granting of a courtesy interview, even erroneously, if at the request of the registrant should not, by virtue of its necessitating an induction postponement, be used to make timely all previously filed claims. Otherwise, a local board could never grant a courtesy interview without concatenating reopening. We think this result is precluded by *Ehlert* and its rationale. In reference to the "legal limbo" in which a registrant is placed while his induction is postponed, we note only that it was at Waldron's request and only for a brief period of time. See United States v. Benson, 469 F.2d 1356 (7th Cir. 1972), where far longer postponements were held not to be prejudicial.

■ Waldron also urges that the intervention by the State Director effectively reopened his classification, thus circumventing the bar of *Ehlert.* We first note that the local board treated the postponement and interview as being pursuant to 32 C.F.R. § 1632.2, and not as a mandatory reopening under 32 C.F.R. § 1625.3. Regulation § 1625.2, however, as the Supreme Court held in *Ehlert,* "*barred* presentation to the local board of a claim that allegedly arose between mailing of a notice of induction and the scheduled induction date." 402 U.S. at 108, 91 S.Ct. at 1325. (Emphasis added.) There being no basis for the board to assume that the State Director had invoked 32 C.F.R. § 1625.3, it is clear that the board could not have reopened Waldron's classification. See Wright v. Ingold, 445 F.2d 109 (7th Cir. 1971).

Waldron argues that even if reopening were improper under 32 C.F.R. § 1625.2, the State Director's request nevertheless mandated a reopening under 32 C.F.R. § 1625.3(a). He analogizes his position to that in United States v. Aufdenspring, 439 F.2d 388 (9th Cir. 1971), United States v. Noonan, 434 F.2d 582 (3d Cir. 1970), cert. denied, 401 U.S. 981, 91 S.Ct. 1190, 28 L.Ed.2d 333 (1971), and Miller v. United States, 388 F.2d 973 (9th Cir. 1967). Each case is, however, distinguishable from the case before us. In *Aufdenspring,* the language of the letter from the California Headquarters was construed as releasing the board from any restrictions. This distinction was relied upon by the Ninth Circuit itself in United States v. Hand, 443 F.2d 826 (9th Cir. 1971). In *Noonan,* the State Director's letter was much stronger than the oral statement of Colonel Rhodes. *Miller* is the source of the doctrine of *de facto* reopening, but, although the language has some relationship to the present case, a significant fact is that Miller by a letter had claimed conscientious objector status *before* his induction notice was mailed and thus the case has an inapposite foundation for us. Further, on their facts, all three of the above cases are distinguished from Waldron's in that in each there was "written" communication from the state headquarters to the local board, a requirement of 32 C.F.R. § 1625.3. Colonel Rhodes's advice was merely oral and thus failed to comply with the regulation.

In his reply brief, Waldron concedes that there was no "order," but argues that the "State Director *authorized* it [the board] to reopen his classification." While the State Director can release the local board from the constraints of § 1625.2, *e. g.*, United States v. Aufdenspring, *supra*, we do not find "authorized" to be equatable with "ordered." While we recognize that some of the state headquarters' written communications in the *Miller* line of cases scarcely seem to be couched in mandatory terms, and without determining that we would have reached the same conclusion as those courts did on the facts before them, we do note the *Miller* court language that the "effect of what the State Director did was to open up the situation . . . in the same manner and to the same extent as if the induction order had not been issued." 388 F.2d at 975. We feel compelled to no such conclusion in the present case by the oral recommendation of postponement and interview. We do not, however, rest our determination solely on the oral nature of the communication as we would not find the *Miller* effect even if the State Director's recommendation had been in a formal written communication.

Even if we were to assume, *arguendo*, that the State Director, in contradistinction to an ordered release from the § 1625.2 restraints, could delegate his authority to reopen to the local board, we find no basis for thinking that the delegation would be appropriate in the present type of case. All of the cases cited by Waldron were instances in which the State Director was found by the reviewing court actually to have exercised his reopening authority under § 1625.3. We do not see any instance of an intermediate position between § 1625.2 and § 1625.3 with the State Director delegating his authority to the local board. The regulations just do not include such authority. That the courtesy interview recommended by the State Director may have been pointless, insofar as the board's authority was concerned in light of the subsequent decision in *Ehlert*, does

not require us to rewrite the regulations to provide authority that did not otherwise exist.

Since we hold that the State Director did not reopen Waldron's classification, it is immaterial what statement the board made to Waldron in denying him reopening since the board was "barred" from reopening on any grounds, *Ehlert, supra*. Waldron urges, however, that we cannot know that the local board relied on § 1625.2 for not reopening his classification, and therefore we must reverse. If, as we held in Wright v. Ingold, *supra*, the board had no power even to consider a late conscientious objector claim, then no reasons are necessary. Such cases as United States v. Stetter, 445 F.2d 472 (5th Cir. 1971), cited by appellant, are inapplicable since the court in those cases was not reviewing a post-induction-order claim, but rather one timely filed. *Ehlert* has made the area here involved *sui generis* in selective service law by the use of the term "barred."

Finally, Waldron asserts, because the local board may have passed on the merits of his claim for conscientious objector status, he may not be able to get such review in the Armed Services and that his case is controlled by cases such as United States v. Ziskowski, 465 F.2d 480 (3d Cir. 1972), and United States v. Alioto, 469 F.2d 722 (1st Cir. 1972), rather than by *Ehlert*. The Third Circuit reached its result on language from the local board similar to that we have before us. It was held that this language might be interpreted by the armed forces as a ruling on the merits (sincerity) of the registrant's claim, thus barring any in-service review. Since this would create that sort of "no-man's" land that *Ehlert* had said should not exist, the Third Circuit reversed the conviction. The First Circuit likewise reached this result in *Alioto*. Apparently neither circuit has adopted a rule such as that stated in Wright v. Ingold, *supra*. In this Circuit, the local board has no power to reopen and thus any ruling must perforce be on grounds of lateness insofar as the armed forces

may be concerned. Any ruling on the merits by the board, being impermissible in this Circuit, would not be reviewed by the courts and could not serve to bar subsequent in-service adjudication of conscientious objector status without amounting to a denial of due process and thereby allowing a writ of habeas corpus to issue. Thus, we find the *Ziskowski-Alioto* rationale inapplicable in the present case.

■ Apart from his conscientious objector claim, Waldron claims error in the denial of an opportunity to obtain a I-S (C) student deferment until the end of the academic year for his graduate school work during the school year 1968–69. The local board advised Waldron that there were no graduate deferments available. In part, this denial was based on the regulation adopted by the Selective Service System, 32 C.F.R. § 1622.-15(b), which dealt with eligibility for Class I-S. Waldron contends that this regulation is in derogation of the underlying act, § 6(h)(1) of the Military Selective Service Act of 1967 [MSSA of 1967], 50 U.S.C. App. § 456(h)(1) (1968), in that it disqualified from I-S (C) *all* students (a) who had received II-S deferments even though the deferment was only as a graduate student, (b) who had received a II-S deferment only under the provision of the law prior to the MSSA of 1967, or (c) who had received a II-S deferment without "requesting" it. This court has held that the first error referred to above would require reversal of a conviction, Foley v. Hershey, 409 F.2d 827 (7th Cir. 1969). Appellant may be correct as to the other two alleged errors as well. We do not have to reach those issues because it is clear that, even if the regulation is overbroad, Waldron was clearly within the permissible scope of the regulation. This is not a First Amendment case where it may be permissible to challenge for overbreadth a statute whose constitutionally permissible scope would include a prohibition of the defendant's actions. We will not overturn a conviction under an overbroad regulation when the action was within the valid prohibition of the underlying statute. Here, the record shows that Waldron had received his II-S deferment as an undergraduate, under the 1967 Act, and at his request, all in accordance with the statute itself.

■ Finally, Waldron contends, even though he may have requested a II-S deferment by the execution of SSS Form 104, that the form was so misleading as to vitiate the request at least to the extent that it was deemed to constitute a waiver of future I-S(C) deferments after he had received his baccalaureate degree. There are two types of student deferments. The II-S, full-time student deferment is found in Section 6(h)(1) of the MSSA of 1967 while the I-S(C) deferment for a student to finish his year in school is found in 50 U.S.C. App. § 456(i). SSS Form 104 in quoting from Section 6(h)(1) omits the language of the section which creates the exception to eligibility for the I-S(C) deferment which is otherwise mandated by § 456(i). Waldron argues that he was affirmatively misled by the form in that he did not realize in requesting a II-S deferment as an undergraduate student he was waiving a future I-S(C) deferment when a graduate student. At first glance this is an appealing argument but to accept it is to ignore the entirety of SSS Form 104, for the next sentence states:

> "Any person who requests and is granted a student deferment under this paragraph, shall, upon the termination of such deferred status or deferment, and if qualified, be liable for induction as a registrant within the prime age group irrespective of his actual age, unless he is otherwise deferred under one of the exceptions specified in the preceding sentence [extreme hardship to dependents or for graduate study, occupation, or employment necessary to the maintenance of the national health, safety, or interest]."

We find that this sentence clearly and undeniably advises the registrant that following his II-S student deferment, he

may obtain a further deferment only if he falls within one of the two specified categories. Waldron did not. Thus, a I-S(C) deferment was by this language precluded.[2]

For the reasons hereinbefore given the judgment of the district court is affirmed.

Affirmed.

---

**2.** We note that this language may be broader than Congress meant as it could be read to bar other deferments if the registrant had received a II-S under the MSSA of 1967. But that question is not before this court. All we need to say is that the language was sufficiently clear to advise Waldron that he would not be eligible for a I-S(C) deferment at a later date, and so the form is not misleading so as to vitiate the request required by the Act itself.