**UNITED STATES of America**

v.

**Eugene Hoffman COTTON, Defendant,**
**No. 71 Cr. 935 D.N.E.**

United States District Court,
S. D. New York.

Aug. 3, 1972.

Whitney North Seymour, Jr., U. S. Atty., SDNY by George Wilson, Asst. U. S. Atty., New York City, for plaintiff.

Michael N. Pollet, New York City, for defendant.

EDELSTEIN, Chief Judge.

## OPINION

This is a criminal prosecution for refusal to submit to induction into the armed forces in violation of Title 50 Appendix, United States Code, Section 462(a) and Title 32, Code of Federal Regulations, Section 1632.14. Defendant having waived a trial by a jury his case was tried to this court on May 8, 1972. Defendant's refusal to submit to induction is not disputed. (Tr. pp. 5–6).

There is substantial agreement as to the facts. Cotton is a registrant of Selective Service Local Board No. 19 (hereinafter "Board"), having duly registered on March 2, 1963. From December 18, 1963, until August 13, 1968, inclusive, Cotton held a II–S classification (full-time student). On July 11, 1968, after a pre-induction physical examination, he was found medically acceptable for induction into the armed forces. A statement of acceptability (DD Form 62) was forwarded to him on July 19, 1968. Upon graduation from school Cotton was reclassified I–A (available for military service). Subsequently, on September 17, 1968, he was reclassified II–A. This reflected an occupational deferment for his employment as a teacher with the New York City Public School System. This classification was later withdrawn when Cotton's Board was notified of the cessation of his employment. Cotton was reinstated to I–A classification on August 19, 1970.

On November 17, 1970, Cotton was issued an initial order to report for induction (SSS Form 252). On November 25, 1970, the Board received a letter from the defendant claiming status as a conscientious objector and seeking postponement of his scheduled December 1, 1970, induction. On November 25, 1970, the Board postponed defendant's induction and forwarded to him the forms he requested. (SSS Forms 150 for Conscientious Objector, and 151 for voluntary service.)

Cotton's completed forms and five (5) accompanying letters attesting to his sincerity were received at the Board headquarters on December 9, 1970. On this date, after consideration and review of defendant's SSS Form 150 and complete selective service file, the Board declined to reopen the I–A classification.[1] Notice of this decision was mailed to Cotton the next day.[2] Thereupon the Board reissued an order to report for induction. The induction date was now set for December 28, 1970.

On December 11, 1970, Cotton wrote to his Board requesting a reconsideration of his classification and a personal appearance. His request was granted. Pending a discretionary interview to be held January 19, 1971, the December 28, 1970, induction date was postponed.

Cotton appeared for his personal interview as scheduled. The Board again refused to reopen his I–A classification. The reasons for this denial were recorded on New York Form 7 entitled "Summary of Appearance Before Local Board." (Defendant Exhibit H) The

---

1. The minutes of action of Cotton's Board, dated December 9, 1970, do not indicate a consideration of Cotton's claim. This is contrary to the Board's representation to Cotton that it reviewed his claim on that date. Moreover, these same minutes of action reveal that four (4) Board members were present and acted upon all other registrants (989) considered on December 9, 1970. The Board's decision not to reopen Cotton's classification, allegedly rendered on December 9, 1970, was sustained by a unanimous vote of three (3) to zero (0).

2. In pertinent part the letter stated:
"This is to inform you that your complete Selective Service file was reviewed and considered by the local board members on December 9, 1970. Your claim for conscientious objection status was thoroughly evaluated. Based on the above information, we wish to advise you that it was the decision of the local board members not to reopen your present I–A classfication."

record was effected by checking Box No. 1 on Form 7, which reads:

"It is the local board's opinion that the registrant is not a genuine conscientious objector."

To explain this action the Board noted:

"Registrant's feelings do not justify a change in classification."

On January 21, 1971, Cotton was notified of the Board's action.

Subsequently, on January 25, 1971, another induction order was mailed to Cotton. The induction date was now February 11, 1971. Cotton reported as ordered but was declared a holdover pending a redetermination of his medical acceptability for service. This procedure was repeated on two other occasions. On April 26, 1971, Cotton was found fully acceptable for induction. Notification of this final determination was mailed to him on May 3, 1971. Cotton's induction date was now set for May 13, 1971. Cotton reported as ordered but refused to submit to induction. This prosecution ensued.

The government contends that the United States Supreme Court decision in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), decided April 21, 1971, is dispositive of this case. The decision in *Ehlert* simply involves settling in which forum [3] late crystallizers [4] must have an opportunity for a ruling on the merits of their conscientious objection claims. In light of the United States Army's assurance that such claims would be fully considered by it pursuant to its own regulations, 402 U.S. at 106–107, 91 S.Ct. 1319, 28 L.Ed.2d 625, *see* Army Regulation 635–20 and Department of Defense Directive (DOD) 1300.6, Section IV B 2, the Court opted for in-service processing as the proper remedy. Wherefore the government advocates the conclusion that if Cotton would have submitted to induction after the decision in *Ehlert,* he would not have been denied an opportunity for a complete review and determination.

The defendant contends that *Ehlert* does not apply to him inasmuch as his conscientious objection claim met the standards required for a reopening of his classification as set forth in United States v. Gearey I, 368 F.2d 144 (2d Cir. 1966) cert. denied 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967); United States v. Gearey II, 379 F.2d 915 (2d Cir. 1967) and Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970). Further, he urges that his induction order is rendered invalid because his Board's refusal to reopen his classification based upon the finding that he was not a genuine conscientious objector is without basis in fact. Title 50 Appendix, United States Code, Section 460(b) (3); Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Thus since his claim pre-dated *Ehlert,* Cotton reasons that the application of *Ehlert* to him would sanitize the illegal action of his Board. This position is persuasive.

Prior to *Ehlert* the law of this circuit relating to post-induction order claims for conscientious objection was well settled. A local board was required to reopen a registrant's classification only if (1) a *prima facie* claim for conscientious objector status was presented, and (2) a change in the registrant's status resulting from circumstances over which he had no control had occurred. Paszel v. Laird, *supra, see* 32 C.R.R. § 1625.2. The requisite change in status was defined to be not merely a change in beliefs (as suggested in United States v. Gearey I and II, *supra,*) but a change in beliefs entitling

---

3. The choice of forums was between the Selective Service System and the military service.

4. Late crystallizers are those registrants whose claims to conscientious objection to war in any form matured between the mailing of a notice to report for induction and the scheduled induction date.

the registrant to conscientious objector status. Paszel v. Laird, *supra,* 426 F. 2d at 1174. In setting this standard the *Paszel* court stated:

"We recognize this means that, where the alleged change in status is a newly crystallized conscientious objection, a decision to reopen will necessarily lead to a decision to reclassify in the absence of new evidence reflecting adversely on the claim and, conversely, that a decision not to reopen will mean that a registrant will not have the right to a personal appearance or appeal and will be left only with judicial review of the refusal to reopen * * *."

"But the alternative—that a *prima facie* showing requires reopening at this late stage even though the board is permissibly unconvinced of a change in status resulting from circumstances beyond the registrant's control—is even less attractive, * * *." *Id.*

Also, a selective service local board was not required to reopen a registrant's classification, if, predicated upon a basis in fact, it found a registrant to be insincere. United States v. Gearey II, *supra,* 379 F.2d at 920; *see* United States v. Gearey I, *supra.*

▆▆▆ Thus, Cotton's *prima facie* post-induction order claim[5] was reviewed preliminarily, Paszel v. Laird, *supra,* 426 F.2d at 1173, by his Board. The Board twice declined to reopen his classification. On each occasion it determined he was insincere. No showing has been made to support these findings. Yet it is important for courts to know the grounds upon which a board acted, Paszel v. Laird, *supra,* 426 F.2d at 1175, because of the severely circumscribed scope of judicial review applicable to actions of selective service boards.[6] While it has been held that a local board need not state its reasons for declining to reopen, United States v. Campbell, 439 F.2d 1087 (9th Cir. 1971), especially when the reasons are clearly evident in the record, United States v. Morico, 415 F.2d 138 (2d Cir. 1969), vacated and remanded on other grounds, 399 U.S. 526, 90 S.Ct. 2230, 26 L.Ed.2d 776 (1970); United States v. Mangone, 333 F.Supp. 932 (S.D.N.Y. 1971), aff'd in open court, 456 F.2d 1336 (2d Cir. 1972); United States v. Aull, 341 F.Supp. 389 (S.D.N.Y.1972); *cf.* United States v. Lenhard, 437 F.2d 936 (2d Cir. 1970), cert. granted, vacated and remanded 405 U.S. 1013, 92 S.Ct. 1296, 31 L.Ed.2d 477 (1972), "* * * a mere statement by the Local Board of lack of belief in sincerity, unaccompanied by any supporting detail, [is] not enough to overcome a [prima facie] claim of conscientious objection * * *." United States v. Deere, 428 F.2d 1119, 1122 (2d Cir. 1970). *Accord,* United States v. Jones, 447 F.2d 589, 592 (7th Cir. 1971); United States v. Mantione, F.Supp. (S.D. N.Y.1972).

▆▆▆ The most that can be said for the Board's findings of Cotton's insincerity is that they are conclusory in nature. An independent review of the record discloses Cotton's late filing as the sole reason for the Board's determination. This is an insufficient basis under the applicable law in this circuit

5. A *prima facie* claim for conscientious objection can be articulated with ease. Paszel v. Laird, 426 F.2d 1169, 1174 (2d Cir. 1970); *see* Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

6. Title 50 Appendix, United States Code, Section 460(b) (3). As stated in United States v. Gearey II, 379 F.2d 915, 921 (2d Cir. 1967):
"'[I]t is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations. Dickinson v. United States, 346 U.S. 389, 396 [74 S.Ct. 152, 157, 98 L.Ed. 132] (1953). The classification can be overturned only if it has "no basis in fact." Estep v. United States, 327 U.S. 114, 122 [66 S.Ct. 423, 427, 90 L. Ed. 567] (1946). Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 395, 99 L.Ed. 428.'"

on which to predicate a finding of an applicant's insincerity. United States v. Gearey I, *supra,* 368 F.2d at 149–150; United States v. Gearey II, *supra,* 379 F.2d at 919; Paszel v. Laird, *supra;* United States v. Bornemann, 424 F.2d 1343 (2d Cir. 1970).[7] *Accord,* Ehlert v. United States, *supra.*[8]

Having concluded that the Board's finding of Cotton's insincerity lacks a basis in fact, it remains to be shown why the government's total reliance upon *Ehlert* is misplaced. The government has failed to remember that the Supreme Court in settling in which forum a post-induction order claim for conscientious objection would be heard on its merits necessarily contemplated that claims of late crystallizers would have one, and only one, full opportunity for a prompt, fair and proper hearing. *Cf.* United States v. Shomock, 462 F.2d 338 (3rd Cir. 1972); United States v. Ziobro, 337 F.Supp. 1178 (S.D.Iowa, 1972). The Supreme Court also contemplated that a situation could arise in which neither the local board nor the military would make available a *full* opportunity to present a *prima facie* conscientious objection claim for determination under established criteria. Ehlert v. United States, *supra* at 107, 91 S.Ct. at 1325 (emphasis added). Should such a situation occur, the Supreme Court concluded that " * * * a wholly different case would be presented." *Id.* A comparison between the Selective Service proceedings involving Ehlert and Cotton clearly shows the significant differences between these two cases. *See* United States v. Shomock, *supra.*

Ehlert's conscientious objection claim was never reviewed in any manner by his local board. Nor was he given an interview. After the interposition of his claim Ehlert was notified that " * * * it [his board] had declined to reopen his classification because the crystallization of his conscientious objection did not constitute the 'change in the registrant's status resulting from circumstances over which the registrant had no control' required for post-induction notice reopening under a Selective Service regulation." Ehlert v. United States, *supra,* 402 U.S. at 100, 91 S.Ct. at 1321 (footnote omitted). See 32 C. F.R. § 1625.2. Thus, Ehlert's board considered itself administratively prohibited, as a matter of law, from entertaining his claim. A proper review was reserved for the military, assuming Ehlert's compliance with available in-service procedures. *See* Army Regulation 635–20 and Department of Defense Directive (DOD) 1300.6, Section IV B2.

Both Cotton and Shomock were late crystallizers. Each interposed his claim for conscientious objector status well before the decision in *Ehlert.* Unlike Ehlert, however, both Cotton and Shomock were accorded some form or review within the Selective Service System including personal interviews. Each of their files is unilluminating as to the reasons for the rejection of their claims. Significantly, neither Cotton nor Shomock accomplished induction. Given these circumstances the court in *Shomock* concluded that the proper forum for a *full* hearing on the merits of his claim was in the United States Courts. The Court stated:

"Under AR 635–20 ¶ 3(b) as it has been interpreted in Ehlert, 402 U.S. at 106–107, 91 S.Ct. 1319 [28 L.Ed. 2d 625], Shomock might still not receive a full and fair hearing of his

---

7. The government has practically conceded a no basis in fact finding. When pressed at trial to support the Board's determination, by pointing to evidence in the record, the government could only show that the belatedness of Cotton's claim precipitated the Board's conclusion. (Tr. pp. 57–66)

8. As stated in *Ehlert*:
"The very assertion of crystallization just before induction might cast doubt upon the genuineness of some claims, but there is no reason to suppose that such claims could not be every bit as bona fide and substantial as the claims of those whose conscientious objection ripens before notice or after induction." 402 U.S. at 103–104, 91 S.Ct. at 1323.

conscientious objector claim by the Army. Ehlert should eliminate any Army reluctance to review Shomock's claim under ¶ 3(b) (1), but ¶ 3(b) (2), which covers the unelaborated 'denial' by the Selective Service of Shomock's conscientious objector claim prior to induction, still exists to give the Army a basis to avoid reaching a decision on the merits of his claim."

\* \* \* \* \* \*

"A reading of ¶ 3(b) (2) does not indicate whether the Army would consider a mere denial unelaborated by the Local Board to be a denial on the merits. Even if Shomock were allowed to submit to induction to have his claim heard, he has no guarantee of his present entitlement to a military hearing. *See* Grubb v. Birdsong, 452 F.2d 516 (6th Cir. 1971). Ehlert, 402 U.S. at 107, 91 S.Ct. 1319 [28 L.Ed.2d 625], suggests that where doubt exists, as here, that the Army will provide a full opportunity for Shomock to present his prima facie claim, Ehlert does not control. The fact remains, however, that somewhere, sometime, Shomock is entitled to have a full and fair hearing on the merits of his conscientious objector claim. Ehlert, 402 U.S. at 103–104, 91 S.Ct. 1319 [28 L.Ed.2d 625]. We are not assured that under the present circumstances Shomock will get such a hearing from the Army. Indeed, the contrary would appear to be the case."

Since the facts involving Cotton and Shomock are so strikingly similar in their salient aspects as to be practically interchangeable, the court has no hesitation in adopting the reasoning and conclusions in *Shomock* as entirely applicable to Cotton. Specifically, it will be remembered that Cotton, like Shomock, made no claim for conscientious objector status prior to receiving his notice of induction. Also, AR 635–20 ¶ 3(b) existed at the time their beliefs crystallized. Similarly, it can be said here, as it was said in *Shomock* that Cotton's request for an Army hearing would, in all probability, not have been acted upon favorably if AR 635–20 ¶ 3(b) is to be believed. In Cotton's case the probability of favorable action by the Army becomes even more remote in view of the Board's checkmark on New York Form 7, together with its failure to substantiate its conclusion that Cotton was insincere.

The Board's treatment ostensibly suggests that Cotton's claim was considered by it on the merits. But this suggestion can be misleading since the Board, by failing to state reasons for denying Cotton's claim, raises the possibility that its decision resulted from considerations other than the merits.

Since the Board did not meet the basis in fact standard it could not be clear to Cotton, nor is it clear to the court, why his claim was denied. Moreover, it is uncertain to this court, as it must have been to Cotton, how the Army would deal with him under these circumstances. These circumstances, which were occasioned by the Board's impermissible treatment, should not result in Cotton's conviction for refusal to submit to induction. Accordingly, the court finds Cotton not guilty.

The foregoing constitute the findings of fact and conclusions of law of this court.