## MUSSER v. UNITED STATES

No. 72–1733. Decided November 12, 1973.*

Per Curiam.

The petitioners in these cases were each convicted for refusing to submit to induction into the Armed Forces, 50 U. S. C. App. § 462 (a), and each seeks review of the judgment affirming his conviction upon the sole ground that the order to report for induction was invalid for failure of the local board to reopen his classification pursuant to a request for a conscientious objector classification, see *Mulloy* v. *United States*, 398 U. S. 410, 418 (1970).

In No. 72–1733, the petitioner Musser received an order to report for induction, issued by his local board on September 15, 1970. On September 21, 1970, he re-

*Together with No. 72–6748, *Waldron* v. *United States*, on petition for writ of certiorari to the United States Court of Appeals for the Seventh Circuit.

quested and received Selective Service System Form 150, a special form for those seeking conscientious objector classification. Musser filled out the form, indicating in response to the questions posed that he was conscientiously opposed to participation in war in any form by reason of his religious training and belief, and claiming exemption from combatant and noncombatant training and service pursuant to 50 U. S. C. App. § 456 (j). On September 29, 1970, the local board reviewed Musser's application. The minutes of that meeting indicate that in the opinion of the members of the board, his claim "lack[ed] sincerity" and that he "[had to] report for induction." On the same day he was sent a form letter stating that his application had been received and reviewed, that he was "hereby advised [that the board] did not specifically find there has been a change in status resulting from circumstances over which you had no control," and that pursuant to Selective Service Regulation 1625.2, 32 CFR § 1625.2,[1] his classification would therefore not be reopened.[2]

---

[1] At the time the administrative decisions involved in these cases were made, Regulation 1625.2 read in pertinent part as follows:

"The local board may reopen and consider anew the classification of a registrant . . . upon the written request of the registrant . . . if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; . . . provided . . . the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

[2] As used in the Selective Service Regulations and in this opinion, the term "reopen" signifies a fresh determination by the local board of the classification to which a registrant belongs. See Regulation 1625.11, 32 CFR § 1625.11. When a case is reopened by a local board, the registrant is automatically accorded the right to a per-

Musser was subsequently advised by the board of his continuing duty to report and was in fact ordered to report for induction on January 19, 1971. On that date he appeared at the induction center but refused to submit to induction. For this refusal he was convicted in a jury-waived trial and sentenced to two years' imprisonment. The Court of Appeals affirmed, 478 F. 2d 1068 (CA9 1973).

In No. 72–6748, the petitioner Waldron was, on December 30, 1968, mailed an order to report for induction on February 5, 1969. Shortly thereafter, he requested, received, and completed an SSS Form 150, indicating his opposition to war in any form and requesting a conscientious objector classification. On January 24, 1969, the board notified him that it had reviewed his application but "found no grounds for reopening your classification." Subsequently, on January 28, 1969, the State Director of Selective Service reviewed Waldron's file and recommended to the local board that his induction be postponed pursuant to Regulation 1632.2, 32 CFR § 1632.2, and that he be given a "courtesy interview" pursuant to then-current Local Board Memorandum 41. Waldron was thereupon sent a letter indicating that his induction was being postponed until February 19, 1969, and that he would be granted an interview on February 5, 1969. On February 6, following the interview, he was notified that the board found "no grounds for reopening your classification after you[r] being interviewed" and that he had to report for induction on February 19. He arranged further to postpone the date of his induction

sonal appearance before the local board and an administrative appeal of any adverse decision by the board, Regulation 1625.13, 32 CFR § 1625.13, even though a registrant is "reclassified" in the same classification as that in which he had formerly been put. *Mulloy* v. *United States*, 398 U. S. 410, 414–415 (1970).

until March 27, 1969, in order to be able to report for induction in another city where he was then living, and on that date he refused to submit to induction. He was thereafter tried and convicted of refusing to submit to a valid order to report for induction, and the Court of Appeals affirmed, 474 F. 2d 90 (CA7 1973).

In *Ehlert* v. *United States*, 402 U. S. 99 (1971), this Court reviewed a claim that a local Selective Service board, operating under laws and regulations substantially the same as those involved here, must reopen a registrant's classification following a claim for conscientious objector status made after issuance of an order to report for induction and based on an assertion that the registrant's conscientious objection to war in any form had "crystallized" after the issuance of the order to report. The Court reasoned that "[a] regulation explicitly providing that no conscientious objector claim could be considered by a local board unless filed before the mailing of an induction notice would . . . be perfectly valid" as a reasonable timeliness rule to insure that all possible claims be presented to and reviewed by the local board prior to its determination that a given registrant is subject to induction. *Id.,* at 101–102. The Court also concluded, however, that "those whose views are late in crystallizing" cannot "be deprived of a full and fair opportunity to present the merits of their conscientious objector claims for consideration under the same substantive criteria" that govern claims based on views crystallizing prior to issuance of induction notices. *Id.,* at 103. Such a full and fair opportunity, the Court found, existed in in-service Armed Services procedures for hearing and evaluating conscientious objector claims. Under such a system, the "intolerable" situation of a "no man's land" in which post-notice claims for CO classification were not heard by the local boards because of their timeliness rules, and were not heard by the Army after in-

duction because of a finding that an inductee had waived his right to claim such classification, was avoided: claims crystallizing prior to issuance of an order to report must be directed to and are to be reviewed by local boards, while claims crystallizing thereafter are to be reviewed only by the Armed Forces after induction. *Id.*, at 104 n. 7.

Selective Service regulations, however, did not unambiguously create such a system, but left open the possibility that a classification be reopened after issuance of a notice to report if the local board "specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 CFR § 1625.2. Prior to *Ehlert,* the courts of appeals had divided on the question of whether late crystallization of conscientious objector views qualified as such a change. 402 U. S., at 101 n. 3. In *Ehlert,* we avoided the "theological" argument of whether, as a matter of law, a claim of late-crystallizing conscientious objection was a change over which "the registrant has no control." Rather, we held that in view of consistent administrative interpretation by the Government that changes envisaged by Regulation 1625.2 were limited to "objectively identifiable" and "extraneous" circumstances,[3] such an interpretation of the regulation would be adopted. *Id.*, at 105.

Finally, we considered in *Ehlert* whether "the conditions for the validity of such a rule . . . are met in practice." After reviewing Army regulations, Department of Defense Directives, and a letter from the General Counsel of the Department of the Army, we de-

---

[3] As examples of the sort of nonvolitional changes that Regulation 1625.2 was intended to allow, the Government has consistently cited, and the Court in *Ehlert* mentioned, an injury to the registrant or death in his family making him the sole surviving son. 402 U. S., at 104.

termined that an inductee claiming late-crystallizing conscientious objector status would receive a full and fair opportunity to have his claim heard by Armed Forces personnel. *Id.*, at 106–107.

The petitioners in these cases make overlapping arguments in attempting to avoid the *Ehlert* precedent. First, relying on decisions and opinions of the First and Third Circuits,[4] they contend that the refusals of the local boards to reopen their classifications could be read as a "denial" of those claims and thus a bar to in-service review. In particular, they point to ¶ 3.b (2) of Army Regulation 635–20, not cited or discussed in the *Ehlert* opinion, which states that in-service claims for conscientious objector treatment will not be favorably considered when "[b]ased solely on conscientious objection claimed *and denied* by the Selective Service System prior to induction." (Emphasis added.) In the language of the First Circuit, "if the Army could have read the draft board's reasonless refusal to reopen as a 'denial' then [a registrant] might well have been placed in a mutual buck-passing situation where neither the draft board nor the Army would consider his claim on the merits." *United States* v. *Alioto,* 469 F. 2d 722, 727 (1972). *Ehlert,* the petitioners claim, did not deal with this problem because the board in that case had explicitly stated that it was not denying Ehlert's claim on the merits, but was refusing to reach those merits since no showing had been made of a " 'change in the registrant's status resulting from circumstances over which the registrant had no control.' " 402 U. S., at 100. Thus, they argue, the

---

[4] *United States* v. *Alioto,* 469 F. 2d 722 (CA1 1972); *United States* v. *Ziskowski,* 465 F. 2d 480 (CA3 1972); *United States* v. *Shomock,* 462 F. 2d 338 (CA3 1972). See also *United States* v. *Cotton,* 346 F. Supp. 691 (SDNY 1972); *United States* v. *Usdin,* 6 S. S. L. R. 3039 (EDNY 1972).

ambiguity of the board's refusal to reopen, taken together with current Army regulations, raises the specter of the kind of no man's land specifically found intolerable in *Ehlert*.

The petitioners misconstrue the reasoning and effect of our holding in *Ehlert*. In adopting the Government's interpretation of Regulation 1625.2 that a late crystallization was not a circumstance over which a registrant "had no control," the Court did not hold merely that a local board would be permitted to refuse reopening of a classification in such a situation,[5] but that it was without power to reopen under such circumstances. The mandatory language of Regulation 1625.2, that classification "shall not be reopened" unless the proviso is met, requires no less. If a local board is not empowered to reopen the classification, it follows that it is similarly without power to make any ruling on the merits of a registrant's claims, since such a ruling on the merits of a claim can be made only by a reopening, with concomitant rights in the registrant to a personal appearance and an administrative appeal of an adverse decision, see n. 2, *supra*. From this it follows that in no event can a mere refusal to reopen signify more than a recognition of lack of power to do so; it cannot and does not bear any significance as to the merits of a registrant's claim.

The petitioners further argue that while each board's action in these cases took the form of a refusal to reopen, the decision not to do so was in fact based on the board's consideration of the merits, and could be viewed

[5] Although the language of Regulation 1625.2 is permissive in stating that a local board "may" reopen if the prerequisites are met, in *Mulloy* v. *United States, supra,* we held that a board must reopen a classification if a prima facie case for a new classification has been made to the board and the timeliness requirements are met. 398 U. S., at 415–416.

as such by the Armed Forces.[6]   The simple answer to this contention is that no matter what the boards' apparent motivations in refusing to reopen the petitioners' classifications may have been, the boards were simply without power to reopen, and an expressed or unexpressed indication of the boards' views of the claims cannot be deemed a denial of those claims on the merits.

As in *Ehlert,* we turn finally to a consideration of whether "the conditions for the validity of such a rule . . . are met in practice."   Army Regulation 635–20, ¶ 3.b (2), *supra,* bars in-service review of a request for conscientious

---

[6] The petitioners in both of the present cases, relying primarily on *Miller* v. *United States,* 388 F. 2d 973 (CA9 1967), contend that by considering the merits of the claims for conscientious objector status the boards effected a "de facto reopening" which was merely clothed as a denial of reopening.  In *Miller* and in the subsequent case of *United States* v. *Aufdenspring,* 439 F. 2d 388 (CA9 1971), the State Director, acting under since-rescinded Regulation 1625.3, independently ordered a reopening of the registrants' cases, thus circumventing the timeliness proviso contained in Regulation 1625.2 with respect to requests for reopening by registrants.  The courts in those cases held that the local boards' refusals to reopen were procedurally impermissible, since in each case the refusal was based on a review of the substance of the registrant's claim and thus was in fact a refusal to reclassify without the procedural advantages to the registrant inherent in a reclassification, see n. 2, *supra.*

Those decisions were correctly distinguished by the Courts of Appeals in the present cases. Petitioner Musser's claim for a reopening and reclassification was based solely upon his own request, and thus the timeliness proviso of Regulation 1625.2 fully applied. In Waldron's case, the State Director recommended postponement and an interview in accordance with Local Board Memorandum 41. But the court found that this postponement was effected under the Director's authority given by Regulation 1632.2 to postpone any induction, rather than in the exercise of his authority under Regulation 1625.3 to cause a reopening; further, the court noted that the Director's suggestion of an interview could not in any event trigger a reopening under Regulation 1625.3 since the communication was not in writing, as that Regulation specifically required.

objector status if such a request has been "claimed and denied by the Selective Service System prior to induction." While the critical word "denied" might arguably be applied to a board's refusal to reopen a classification, it cannot be so applied to a refusal to reopen a classification based on a claim of conscientious objection crystallizing after issuance of a notice to report, now that *Ehlert* has made clear that such a refusal can only be based on the board's lack of power to reopen in such a posture. We note that in a letter written by the General Counsel for the Department of the Army with respect to the then-pending case of *United States* v. *Shomock* and printed in the opinion of that case, 462 F. 2d 338, 345 n. 17 (CA3 1972), the General Counsel indicated that when a refusal to reopen is not based on a decision on the merits, a registrant may raise such a claim in the Army and will be given a full and fair hearing.[7] In the event that a local board in one way or another mani-

---

[7] The pertinent part of the General Counsel's letter is as follows:

"If the appellant had entered the Army in May 1969 under circumstances where the Selective Service System actually considered and denied his conscientious objector claim *on the merits,* he would not have been entitled to an in-service determination on the merits of his conscientious objector claim.

"If the appellant had entered the Army in May 1969 under circumstances where his local draft board *merely refused to reopen his classification because his asserted-views crystallized subsequent to the receipt of his induction notice,* in the view of the Department of the Army personnel responsible for administering the conscientious objector claims of in-service members, he would have been entitled under Army policy to an in-service determination on the merits of his conscientious objector claim." 462 F. 2d, at 345. (Emphasis added.)

Although the letter interpreted and reported policies in effect at the time of Shomock's ordered induction, there appears to have been no significant change of policy at the time of the ordered inductions in these cases.

fests its views as to the sincerity of a registrant's late-crystallizing claims, as in the case of the petitioner Musser, or expresses any other conclusion concerning the merits of his claims, such expressions must be given no effect by the Armed Forces in reviewing an in-service conscientious objector request.

It follows that the Courts of Appeals in these cases correctly ruled that the petitioners' orders to report for induction were valid. The motion of the petitioner Waldron for leave to proceed *in forma pauperis* and the petitions for certiorari are granted, and the judgments are

*Affirmed.*

MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL would grant these petitions and set these cases for oral argument.

MR. JUSTICE DOUGLAS, dissenting.

In *Ehlert* v. *United States,* 402 U. S. 99 (1971), the Court decided that the Selective Service System may place special hurdles on conscientious objector claims first raised after a notice of induction has been issued. In allowing the Selective Service to set what it termed reasonable "timeliness" regulations, the Court assumed that the conscientious objector claims not considered by the local board would receive full consideration by the military after induction. *Id.,* at 107. "[I]f . . . a situation should arise in which neither the local board nor the military had made available a full opportunity to present a prima facie conscientious objection claim for determination under established criteria, . . . a wholly different case would be presented." *Ibid.* I dissented in *Ehlert,* arguing that under the regulations of the Selective Service System the local boards should consider the claim as arising from a circumstance over which

the registrant has no control, and that civilian rather than military adjudication of these claims should be preferred. *Id.,* at 108. But apart from my own views on that question, the decisions affirmed in today's *per curiam* are highly questionable, since they appear to be that "wholly different case."

Neither petitioner in these cases received a full administrative review of the conscientious objector claims presented to his local board. But in each case the board purported to look into the claim. In Musser's case the board made an explicit finding that his beliefs were not "sincere"—a finding which one judge below found to be without basis. In Waldron's case no explicit finding on the merits was made, yet the board postponed his induction and interviewed him after the State Director recommended this course following his review of Waldron's file. Waldron's claim was not specifically denied as untimely. Thus in each case it would appear that either explicitly or implicitly some evaluation of the merits of the CO claim was made. But because the claims were considered late, neither petitioner was afforded the normal administrative appeal rights.[1] Such a result can be justified under *Ehlert* only if these claims are to receive full *de novo* consideration by the military. In challenging assurances that their claims will receive such consideration, the petitioners point to ¶ 3.b (2) of Army Regulation 635–20, which was not considered in *Ehlert*. It provides that "[r]equests for discharge after entering military service will not be favorably considered when . . . (2) [b]ased solely on conscientious

---

[1] If the board reopens the file, the registrant has the right after an adverse decision to a personal appearance before the board and appeal. Since here the files were not considered reopened, the petitioners had no such rights. Compare 32 CFR § 1625.4 with 32 CFR § 1625.13.

objection claimed and denied by the Selective Service System prior to induction."

The issue, then, is whether the actions of petitioners' local boards may constitute, in the Army's view, denial of the CO claim, thus barring its consideration by the Army. On its face the regulation would surely allow this construction. Such a possibility could perhaps have been avoided if the local boards in these cases had explicitly based their actions on the claims' being untimely, as the Board in *Ehlert* did. But the boards here did not do this, and indeed in Musser's case purported rather clearly to reject the claim on the merits. These cases are thus different from the petitioner's in *Ehlert*. With the local board's actions here at best ambiguous, we cannot know that the Army will consider the claims.

The majority emphasizes that in the circumstances of these cases the local boards were without authority to reopen the classifications and consider the claims on the merits. That is, of course, now the law. But while this rule effectively forecloses registrants from the procedural rights within the Selective Service System that a reopening would afford, it cannot guarantee that the Army will afford the registrant a full hearing on his claims. That will depend upon the Army's application of its own regulations to these facts.[2]

---

[2] Unlike *Ehlert*, in these cases we have no assurances from the Army that the registrants will receive a hearing. The majority refers to a letter from the Army's General Counsel lodged with the Court of Appeals in *United States* v. *Shomock*, 462 F. 2d 338, 345 n. 17 (CA3 1972). But this letter does no more than distinguish between claims denied by the Selective Service System on the merits and those not considered because the board did not reopen the classification; only the latter will receive a hearing in the Army. But there is no assurance that in the confused circumstances of these cases the Army will not consider these claims to have been denied on the merits.

Indeed, even if we assume that the Army will superficially grant petitioners' claims *de novo* consideration, we in fact have no way of discovering whether *sub silentio* some weight will be accorded the prior proceedings of the draft boards. Yet those proceedings are deserving of no weight whatsoever since petitioners were foreclosed from the administrative appeal ordinarily allowed.

The opinions summarily affirmed today conflict squarely, as the Solicitor General concedes, with decisions in the First, Second, and Third Circuits. *United States* v. *Alioto,* 469 F. 2d 722 (CA1 1972); *United States* v. *Jerrold,* 480 F. 2d 1293 (CA1 1973); *United States* v. *Cotton,* 346 F. Supp. 691 (SDNY 1972); *United States* v. *Usdin,* 6 S. S. L. R. 3039 (EDNY 1972); *United States* v. *Shomock,* 462 F. 2d 338 (CA3 1972); *United States* v. *Ziskowski,* 465 F. 2d 480 (CA3 1972); *United States* v. *Folino,* No. 72–1974, CA3 June 29, 1973. At a minimum we should have set these cases for argument and full briefing.