**UNITED STATES of America, Appellee,**

v.

**Robert Gene ROSEBEAR, Appellant.**

**No. 73–1616.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1974.

Decided April 19, 1974.

Larry Leventhal, Minneapolis, Minn., for appellant.

Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and STEPHENSON, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

Defendant Robert Gene Rosebear brings this timely appeal from his conviction upon an indictment charging him with willful and knowing failure to submit to induction into the armed services in violation of 50 U.S.C. App. § 462. He also appeals from an order reported at 353 F.Supp. 121 (D.Minn.1973) denying his pre-trial motion to dismiss, which had been brought on the grounds that the defendant is a member of the Indian race and that this status and certain treaties prevented him from being involuntarily compelled to serve in the armed forces. The defendant waived his right to a jury trial, was tried by the court, the Honorable Judge Neville (now deceased) presiding, and was found guilty as charged. He was sentenced to two years imprisonment with the provision that after serving four months, the balance of the sentence would be suspended and the defendant would be placed on probation for the remainder of the two year period. The order and the judgment of conviction are affirmed.

The material facts concerning the defendant's refusal to submit are not in dispute. Rosebear first registered with his draft board on August 5, 1965. Between that time and May 26, 1969, he intermittently received student defer-

ments. On October 6, 1969, he was classified I-A, and on January 15, 1970, he was ordered to report for induction on February 2, 1970. A student certificate from the University of Minnesota was thereafter forwarded indicating the defendant's attendance at the University. By letter dated January 30, 1970, the defendant was informed that his order to report for induction was cancelled and that he would be classified I-S(c) at the next board meeting. The I-S(c) classification provides a one-time deferment enabling a registrant to postpone induction as a student until the end of the academic year or until he ceases to pursue his studies satisfactorily, whichever occurs earlier. See 32 C.F.R. § 1622.-15(b)(1971).[1] Rosebear was informed in the letter that he would be retained in that classification until either of the two specified events listed in the regulation occurred and was orally informed that the I-S(c) deferment would end in the summer following the end of the spring quarter classes. The I-S(c) classification was granted on March 5, 1970. The defendant ceased attending school in June of 1970; he did not apprise his draft board of that fact. He was not again reclassified I-A until February 24, 1971. Rosebear neither appealed this classification nor requested a personal appearance before the board. An induction order was issued on March 29, 1971, ordering the defendant to report for induction on April 29, 1971. This order was postponed after the defendant requested a form 150, the Special Form for Conscientious Objector, on April 6, 1971, in a letter presenting a prima facie claim of conscientious objection. The local board informed Rosebear by letter on May 12, 1971, that it had "determined that there was no change in circumstances beyond your control, therefore, your classification was not reopened," citing Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971) for authority for refusing to consider his claim. The board also in-

formed Rosebear he could submit his claim to the armed force into which he would be inducted and reissued an order to report for induction on May 27, 1971. The defendant failed to report for or submit to induction as ordered. This prosecution followed.

Rosebear offers several grounds for reversal of his conviction:

I. The defendant's local board failed to follow the proper order of call by scheduling the defendant for induction after the applicable period of vulnerability for involuntary induction had elapsed.

II. Where a local board in refusing to reopen a registrant's classification fails to make it clear that the merits of a post-induction conscientious objector claim were not decided, the registrant's right to a subsequent military hearing would be jeopardized and therefore a conviction cannot stand.

III. The quasi-sovereignty of the Indian nations, the effective lack of full citizenship by Indian people, and Chippewa treaty commitments means the United States cannot compel the involuntary induction of American Indians into the armed services.

The defendant's first contention is that the local board failed to follow the proper order of call established by 32 C.F.R. § 1631.7 (1971) and Local Board Memorandum No. 99 (as amended, November 18, 1970), which provided for implementation of the Random Selection Lottery System. These provisions established a system of priority or selection groups for the induction of Selective Service registrants into military service, so that a registrant would have a limited exposure to induction. Under the sequence provided, the First Priority Selection Group consisted of registrants who were classified I-A and who therefore were subject to induction if their lottery number was reached in that year. 32 C.F.R. § 1631.7(c)(2)(1971). On January 1, those registrants who were

1. The I–S(c) classification is no longer being given. See 32 C.F.R. § 1622.2 (1973).

in the First Priority Selection Group on the previous December 31 and whose random sequence number had not been reached during the previous year were placed in the Second Priority Selection Group. 32 C.F.R. § 1631.7(d)(2)(1971). If their random sequence number had been reached during the previous year but they had not been issued orders to report for induction during the year, they would be placed in the Extended Priority Selection Group on January 1, which was subject to call before the First Priority Selection Group of the next year. 32 C.F.R. § 1631.-7(d)(4)(1971). It is undisputed that Rosebear's sequence number had been reached in 1970. Members of the Extended Priority Selection Group were vulnerable to the draft until April 1, at which time those who had not been issued an induction order would be assigned to the Second Priority Selection Group, where they were subject to induction only upon depletion of the available manpower in the other selection groups. 32 C.F.R. § 1631.7(d)(5) (1971).[2]

Rosebear contends he should have been reclassified from I-S(c) to I-A in June 1970, thereby entering the First Priority Selection Group for 1970 at that time, the Extended Priority Selection Group on January 1, 1971, and the Second Priority Selection Group on April 1, 1971, after which date he would not have been available for induction under the provisions of 32 C.F.R. § 1631.7 (1971). He maintains that his local board had a duty to classify him I-A in June 1970, which he argues was the end of the academic year, when his right to a I-S(c) classification expired. Because his board failed in this duty, he should now be constructively held to have been so classified, thus qualifying him for the Second Priority Selection Group after April 1, 1971. His induction after that date was thus invalid.

The trial court determined that the local board's failure to reclassify Rosebear in June 1970 was consistent with the then existing regulations and policy, specifically holding that an undergraduate academic year may be interpreted to mean one calendar year. Thus, Rosebear's academic year was held to run from March 1970, when he received his I-S(c) deferment, to March 1971, one calendar year later. Under this definition, the local board had no duty to reclassify Rosebear I-A in June 1970, and its procedure in reclassifying him I-A in February 1971, thereby placing him in the 1971 First Priority Selection Group, was validated.

We seriously doubt whether the trial court's interpretation of academic year was correct.[3] However, we find it un-

---

2. 32 C.F.R. § 1631.7(d)(5) also provided in part as follows:

 . . . except that members of the Extended Priority Selection Group who would have been ordered to report for induction to fill the last call in the first quarter of the calendar year but who could not be issued orders shall remain in the Extended Priority Selection Group and shall be ordered to report for induction as soon as practicable. Circumstances which would prevent such an order shall include but not be limited to those arising from a personal appearance, appeal, preinduction, physical examination, reconsideration, judicial proceeding, or inability of the board to act.

3. That interpretation would appear to be contrary to the term's plain and accepted meaning and common usage in this country. Webster's New International Dictionary (2d

ed. 1940) defines the term as "the annual period of sessions of an academic institution, usually extending in the United States from late in September till well into June." Other dictionaries contain similar definitions.

The Selective Service System itself has interpreted the term to mean the normal school year in other situations. A November 9, 1970, letter to all state directors from Daniel J. Cronin, Assistant Deputy Director of Selective Service Operations, interpreting Local Board Memorandum No. 112, indicated the end of the academic year for graduate and professionaal students would be the end of the spring term.

In addition, Local Board Memorandum No. 112 was amended on November 10, 1971 to explicitly define the academic year as a "normal school year, beginning in the fall and ending in the spring," for both graduate and undergraduate students.

necessary to resolve such issue. Even if it were found that Rosebear was entitled to a constructive reclassification to I-A during 1970, thus placing him in the First Priority Selection Group for that year and the Extended Priority Selection Group on January 1, 1971, he received his order to report for induction within the time limits of Local Board Memorandum No. 99 and 32 C.F.R. § 1631.7 (1971). Local Board Memorandum No. 99 provided that anyone in the Extended Priority Selection Group who had not been issued an order to report for induction before April 1 would be transferred to a lower priority. However, an exception was provided in cases where a registrant would have been called before April 1 but could not be issued an order; these registrants would remain in the extended group and would be ordered to induction "as soon as practicable." Local Board Memorandum No. 99 § III(D) (as amended, November 18, 1970).

 Rosebear was reclassified I-A on February 24, 1971, and his order to report for induction was issued on March 29, 1971, all before the April 1 deadline. His order to report could not be issued sooner because of the requirement in 32 C.F.R. § 1624.3 (1971) that such an order could not be issued during the time given in § 1624.1(a), 30 days, to request a personal appearance before the board to appeal a classification. His scheduled reporting date was set for April 29, 1971, after the April 1 deadline, but this was "as soon as practicable," being the next scheduled induction date after his order was issued. At least 10 days must ensue between the issuance of the order and the scheduled reporting date. 32 C.F.R. § 1632.1

(1971). His scheduled reporting date was further postponed, but by the defendant's own actions in requesting a form 150 and claiming conscientious objector status.[4]

Several cases have interpreted Local Board Memorandum No. 99 and the later identical 32 C.F.R. § 1631.6(d)(5) (1972) to allow induction of members of the Extended Priority Selection Group after April 1 for various reasons. In Smith v. Tarr, 444 F.2d 251 (2d Cir. 1971), the registrant's file was marked with the wrong sequence number in 1970. This clerical error was not discovered until the next January, after the registrant had been assigned to a lower priority group. The Second Circuit upheld the local board's procedure in reassigning him to the extended priority group, sending him for a preinduction physical on February 23, 1971, and, on March 24, 1971, sending him an order to report for induction on April 15, 1971, after the April 1 deadline. The court there found the registrant was prevented from being inducted before April 1 only by two procedural requirements: (1) that he submit to a physical examination before induction, 32 C.F.R. § 1628.10 (1971); and (2) that mailing of a statement of physical acceptability precede the date of induction by 21 days, 32 C.F.R. § 1631.7(a)(1971), 444 F.2d at 252. Similar requirements prevented Rosebear's actual induction before April 1. In Lawton v. Tarr, 446 F.2d 787, 789 (4th Cir. 1971) cert. denied, 405 U.S. 924, 92 S.Ct. 969, 30 L.Ed.2d 796 (1972), the "inability of the local board to act" allowed a post-April 1 induction if the local and the armed forces proceeded "with reasonable dispatch" to comply with the proper procedures and the reg-

---

4. The order to report for induction was not rendered invalid by this postponement, but continued in effect, with the order of May 12, 1971, being a notice of the continuing duty to report. See 32 C.F.R. §§ 1632.2(d), 1632.14(a) (1971). Rosebear argued on appeal that his induction order of May 12, 1971, was invalid, having been signed by a clerk who at that time had not been authorized to sign documents on behalf of the lo-

cal board. However, this was only a "continuing duty letter." The actual order to report for induction was issued on March 29, 1971, and presumably was signed by a board member or an authorized clerk, according to the requirements of 32 C.F.R. §§ 1604.59 and 1631.7(a) (1971). That order was still in effect, having only been postponed, not cancelled by the conscientious objector claim.

istrant was inducted as soon as possible thereafter. The Ninth Circuit has similarly interpreted 32 C.F.R. § 1631.-6(d)(5) to allow a local board "necessary administrative flexibility" in its efforts to comply therewith. United States v. Adkins, 474 F.2d 381, 383 (9th Cir. 1973); United States v. Bowen, 467 F.2d 470, 472–473 (9th Cir. 1972). In United States v. Born, 338 F.Supp. 444 (W.D.Mich.1972), a post-April 1 induction was held to be invalid. However, there the order to report was not issued until June, and delay beyond April 1 was prompted "not by the registrant's conduct nor by regular processing requirements imposed by regulation, but by concededly irregular, unjustifiable and lawless conduct on the part of the local board." *Id.* at 447. *Accord,* United States ex rel. Iverson v. Rhodes, 465 F.2d 402, 406 (7th Cir. 1972). However, such extreme circumstances are not present in the instant case. Rather, the local draft board scheduled Rosebear for induction "as soon as practicable" after April 1, and the induction order was therefore within the bounds of the regulations and was not invalidated by the post-April reporting date.

Rosebear's second contention on appeal is that even though he filed his claim for conscientious objector status after receiving his notice of induction, he has the right to have his claim determined on the merits. He argues that because his local board, in refusing to reopen his classification, failed to make it clear that the merits of his claim were not jeopardized and therefore his conviction cannot stand.

The Supreme Court, in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), clearly held that a draft board need not consider a claim of conscientious objection filed or asserted after a registrant has received a notice of induction. This Circuit has interpreted the *Ehlert* decision to mean that a local board does not even have the authority to consider such claims unless there exists an objective change in cir-

cumstances over which the registrant had no control. United States v. Whalen, 451 F.2d 755, 757 (8th Cir. 1971). *See* 32 C.F.R. § 1625.2 (1971). Such interpretation has now been accepted by the Supreme Court. Musser v. United States, 414 U.S. 31, 35, 94 S.Ct. 196, 38 L.Ed.2d 190 (1973). In *Ehlert,* the local board had refused to reopen the registrant's classification by reason of its finding that the registrant's conscientious objection had crystallized after the receipt of his induction order. The Supreme Court found this procedure under the regulation to be valid and proper, holding, upon the assurance that the Army would hear a late crystallizer's claim, that the proper forum for a determination of the merits of the claim was in the armed service into which he was inducted. 402 U.S. at 107–108, 91 S.Ct. 1319. However, the Court held that a forum must be provided somewhere.

> That those whose views are late in crystallizing can be required to wait, however, does not mean they can be deprived of a full and fair opportunity to present the merits of their conscientious objector claims for consideration. * * * For if, contrary to that assurance, a situation should arise in which neither the local board nor the military had made available a full opportunity to present a prima facie conscientious objection claim for determination under established criteria, see Welsh v. United States, *supra,* [398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed. 2d 308 (1970)] a wholly different case would be presented. *Id.* at 103, 107, 91 S.Ct. at 1323.

Some circuits have interpreted that language to mean that every registrant seeking conscientious objector status must be afforded a meaningful opportunity for at least one full and fair administrative determination of his claim under established criteria. See United States v. Jerrold, 480 F.2d 1293 (1st Cir. 1973); United States v. Alioto, 469 F.2d 722 (1st Cir. 1972); United States v. Ziskowski, 465 F.2d 480 (3d Cir.

1972); United States v. Shomock, 462 F.2d 338 (3d Cir. 1972); see also United States v. Takala, 5 SSLR 3773 (E.D. Mich. Sept. 11, 1972). These courts have held that where a local board in refusing to reopen fails to make it clear that the merits of a conscientious objection claim were not decided, the registrant's right to a subsequent military hearing is jeopardized and a conviction for failing to report for induction cannot. stand. They distinguish *Ehlert* on the ground that in that case the local board clearly did not reach the merits of his claim but disposed of it on the jurisdictional grounds of 32 C.F.R. § 1625.2 (1971). *See Alioto, supra,* 469 F.2d at 726. Rosebear similarly claims his draft board failed to make the reasons for its refusal to reopen his classification clear, and thus his right to an inservice hearing was jeopardized and his conviction cannot stand.

Unlike the circumstances of *Jerrold, Alioto, Ziskowski,* and *Shomock,* however, the instant case falls squarely within the ambit of *Ehlert.* Like the draft board in *Ehlert,* Rosebear's draft board stated that it had determined that there had been no change in circumstances beyond the registrant's control so as to warrant a reopening of his classification. In addition, Rosebear's draft board specifically cited the *Ehlert* decision for the rule that claims for conscientious objector status submitted after an order to report for induction had been sent could not be considered by the Selective Service System. This was clearly a disposition on the jurisdictional grounds of 32 C.F.R. § 1625.2, as interpreted in *Ehlert* and as specifically distinguished in *Alioto. See* 469 F.2d at 726.

Even more compelling is the fact that the Supreme Court has now authoritatively interpreted *Ehlert* so as to reject the contention that a refusal to reopen by the local board could be considered to be a ruling on the merits of a conscientious objector claim. Musser v. United States, 414 U.S. 31, 37, 94 S.Ct. 196, 201, 38 L.Ed.2d 190 (1973). This holding was on the basis that a local board does not even have the power to reopen when there has been no objective change in circumstances over which the registrant had no control.

> [T]he Court did not hold merely that a local board would be permitted to refuse reopening of a classification in such a situation, but that it was without power to reopen under such circumstances. . . . If a local board is not empowered to reopen the classification, it follows that it is similarly without power to make any ruling on the merits of a registrant's claims, since such a ruling on the merits of a claim can be made only by a reopening, . . . From this it follows that in no event can a mere refusal to reopen signify more than a recognition of a lack of power to do so; it cannot and does not bear any significance as to the merits of a registrant's claim. *Id.*

Thus, any action by the local board in refusing to reopen must be on jurisdictional grounds, and the armed services could not interpret such action to be a ruling on the merits. *See also* United States v. Waldron, 474 F.2d 90, 93–94 (7th Cir.), aff'd, Musser v. United States, 414 U.S. 31, 37, 94 S.Ct. 196, 38 L.Ed.2d 190 (1973). Rosebear's claim was clearly not considered by his local board on the merits and the armed services could not interpret its action as such so as to bar his conviction.

The military could have refused to consider Rosebear's claim on the ground that even if it was not considered by his local draft board on the merits, it was based on conscientious objection views existing before he received his induction orders and therefore his proper forum was in the Selective Service System. *See* AR 635–20(3), which reads in pertinent part as follows:

\* \* \* \* \* \*

b. Federal courts have held that a claim to exemption from military service under Selective Service laws

must be interposed prior to notice of induction, and failure to make timely claim for exemption constitutes waiver of the right to claim. \* \* \* Requests for discharge after entering military service will not be favorably considered when—

> (1) Based on conscientious objection which existed but which was not claimed prior to notice of induction, enlistment, or appointment.

■■ This Circuit, in the recent decision of United States v. Stone, 486 F. 2d 785, 790 (8th Cir. 1973), held that a late claiming registrant had waived his right to a determination on the merits of his conscientious objection claim when he failed to present a prima facie claim before he was sent his order to report for induction, even though he had been given an opportunity to do so. Another basis for that decision was the registrant's failure to appeal his I-A classification or to request a personal appearance before the board before he was sent his orders. We adhere to our holding in *Stone* that registrants whose conscientious objection views have crystallized before receipt of their orders to report for induction have only the right to present claims for conscientious objector status before receiving those orders, even if it appears the armed services would not hear those claims. The Sixth Circuit, in Grubb v. Birdsong, 452 F.2d 516, 519 & n. 1 (6th Cir. 1971), has so interpreted *Ehlert* to bar such claims. The Ninth Circuit is in accord. United States v. Salem, 479 F.2d 340 (9th Cir. 1973). Also, as pointed out in *Stone,* language in the *Ehlert* decision itself would support such an interpretation. Justice Stewart recognized the right of the Selective Service System to require registrants to abide by reasonable rules for the orderly administration of the System, including rules requiring timeliness in the presentation of claims for exemption from service. "The power of the Selective Service System to set reasonable time limits for presentation of claims, *with the penalty of forfeiture for noncompliance,* seems never to have been questioned by any court." 402 U.S. at 102 n. 4, 91 S.Ct. at 1322 (emphasis added). "Thus, defendant's failure to timely assert his claim may be considered a forfeiture thereof." *Stone, supra,* 486 F.2d at 790. Rosebear has waived any claim for conscientious objector status by failing to timely assert that claim.

■ Rosebear's third contention on appeal is that the quasi-sovereignty of the Indian nations, the effective lack of full citizenship by Indian people, and Chippewa treaty commitments means the United States cannot compel his involuntary induction into the armed services. A pre-trial motion to dismiss based on these grounds was denied by Judge Neville in an order reported at 353 F.Supp. 121 (D.Minn.1973). He specifically found that the defendant is an American citizen within the meaning of the Selective Service Act by reason of the Nationality Act of 1940, citing previous cases which had considered similar claims. *See* Williams v. United States, 406 F.2d 704, (9th Cir.), cert. denied, 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 561 (1969); Albany v. United States, 152 F.2d 266 (6th Cir. 1945); Ex parte Green, 123 F.2d 862 (2d Cir. 1941); United States v. Neptune, 337 F.Supp. 1028 (D.Conn.1972). We affirm the order upon the basis of Judge Neville's well-reasoned opinion and the authorities cited above.

The judgment and order appealed from are affirmed.